145 So.2d 602 (1962)
Manuel MOLERO
v.
The CALIFORNIA COMPANY.
No. 745.
Court of Appeal of Louisiana, Fourth Circuit.
September 4, 1962.
Rehearing Denied October 29, 1962.
Certiorari Denied November 27, 1962.
*603 Wilkinson & Wilkinson, James Wilkinson, III, New Orleans, for plaintiff-appellant, Camille Silvera Molero, testamentary exrx. of Manuel Molero.
Milling, Saal, Saunders, Benson & Woodward, Lawrence K. Benson and Joseph E. Friend, New Orleans, for defendant-appellee, California Co.
Before LANDRY, RUSSELL and HUMPHRIES, JJ.
PAUL B. LANDRY, Jr., Judge.
The instant appeal is by plaintiff herein, Manuel Molero, who thusly contends he was aggrieved by the judgment of the trial court rejecting his claim for $37,500.00 in liquidated damages against defendant-appellee, The California Company, allegedly due pursuant to a written contract entered into by and between appellant and appellee under date of May 21, 1959.
Subsequent to the filing of this appeal, appellant, Manuel Molero, died and by proper motion before this court, his widow and Testamentary Executrix, Camille Silvera Molero, has been substituted as appellant in his place and stead.
The negotiations, facts and circumstances which transpired between the parties and terminated in the institution of this action are somewhat detailed and involved. Nevertheless, their narration is indispensable to a proper understanding and disposition of the issues herein presented for resolution.
On August 1, 1956, Delacroix Corporation (a Louisiana corporation) granted to decedent, Manuel Molero, its President, an oil, gas and mineral lease on a tract of land owned by said corporation and containing approximately 8500 acres situated in Plaguemines and St. Bernard Parishes. The lease in question provided for the payment of one-quarter royalty to the said lessor Delacroix Corporation. Its primary term was for a period of three years from its date and it contained the other usual clauses customarily found in such instruments. The validity and merchantability of said lease has never been questioned and is not an issue herein.
On or about April 20, 1959, defendant, The California Company, (hereinafter *604 sometimes referred to simply as "California" for purposes of brevity) through its duly authorized employees, commenced negotiations with Molero with the view of obtaining all said lessee's rights under the lease which Molero held from Delacroix Corporation, Molero being the sole possessor thereof by virtue of his ownership of the lease in its entirety. It suffices to say that the negotiations which took place between Molero and California were conducted both verbally and in writing. The initial offers to Molero were contingent upon the procurement from the Lessor, Delacroix Corporation, of an extension of the primary term of the lease for an additional period of one year which extension was declined by said original Lessor. Shortly after the refusal of Delacroix Corporation to accede to an extension of the initial lease, California offered to acquire the lease from Molero in its then existing form (without extension of its primary term) under terms and conditions including, inter alia: (1) a consideration to Molero of the sum of $25,000.00 cash for an option extending through the primary term of the lease; (2) additional consideration of a selection bonus of $25.00 per acre for any portion of the tract with respect to which California might exercise the option granted; and (3) a minimum selection of 3000 acres of the 8500 acre tract or a minimum selection bonus of $75,000.00.
The foregoing offer and proposal was rejected by Molero on the ground that the selection clause being optional with California, the proposition would in effect limit Molero's return under the lease to the sum of $25,000.00 option consideration therein stipulated in the event that California did not exercise the selection right at expiration. In this connection it appears that Molero pointed out to California that such an agreement would in substance deprive him of all his rights under the lease for a maximum consideration of $25,000.00 with the right and privilege of California (during the remaining term of the lease) to acquire invaluable geophysical information regarding such a large tract of land. It further occurred to Molero that following termination of the lease, California, with the knowledge thus acquired, would be in a position to deal directly with Delacroix Corporation for an entirely new lease on all or any portion of the acreage involved. Upon rejection of the aforesaid proposal California subsequently offered the same proposal modified to provide that in the event California permitted the lease to expire without selection and without payment to Molero of the minimum selection bonus of $75,000.00 then and in that event, California agreed to pay Molero liquidated damages in the sum of $37,500.00 should California acquire from Delacroix Corporation a new lease within a year of the expiration date of the original lease to Molero.
The proposal of California as thus revised was rejected by Molero on the ground that it acceptance would place his personal interests in conflict with the interest of the Delacroix Corporation of which he was president inasmuch as he would then be faced with the prospect of negotiating on behalf of the corporation a lease which would or could concurrently earn his individual interest the penalty sum of $37,500.00. Molero then parried the aforesaid counter offer with his own proposal to option the lease to California on the initial basic proposition provided that the penalty stipulated, rather than accruing by the execution of a lease between Delacroix Corporation and California, would become exigible in the event of the unilateral action of California in making an offer to Delacroix Corporation, within a year, for a new lease. The proposal of Molero was then accepted by California and the terms of the agreement reduced to writing with the following penalty provision being inserted therein:
"V. It is further agreed by and between Manuel Molero and California that should the lease first above described expire of its own terms because of the failure of California to select and commence operations for the drilling of a well on the lease premises or on acreage pooled or unitized therewith *605 timely to maintain the lease beyond the primary term hereof, and should California subsequent to such expiration, but on or before August 1, 1960, make an offer to Delacroix Corporation to obtain a new lease covering the land, or any part of same, described in the presently effective lease, California shall thereupon be obligated to pay to Manuel Molero Thirty-Seven Thousand and Five Hundred Dollars ($37,500) as liquidated damages for failure to maintain the present lease beyond its primary term."
Defendant failed to exercise a selection during the primary term of the lease and accordingly, said lease, as to all acreage included therein, terminated August 1, 1959.
Approximately three weeks following termination of the lease, namely, on or about August 24, 1959, two of defendant's representatives, Jack Desmond and Philip Groves (the same representatives and employees of defendant who negotiated with plaintiff the contract herein sued upon) contacted plaintiff at the office of Delacroix Corporation and presented to plaintiff a verbal offer to lease a certain portion of the 8500 acres included in the then expired lease from Delacroix to Molero dated August 1, 1956. More precisely, defendant's said agents presented Molero with a map including the 8500 acres contained in the original lease on which map defendant's said agents had marked and delineated a certain tract of 150 acres which California wished to lease from Delacroix Corporation. At this time Desmond and Groves proposed to pay Delacroix Corporation a lease bonus of $50.00 per acre for an oil, gas and mineral lease covering the identified 150 acres of land. During the course of discussing the proposition, Molero, acting as the representative of the owner, Delacroix Corporation, expressed doubt that said corporation's Board of Directors would entertain an offer to lease such a small portion of its property and suggested that California make an offer on a larger tract while at the same time indicating that a tract of 1500 acres would probably be acceptable to the owner. Within a day or two following this discussion, Desmond left on a two weeks vacation and during his absence his assistant, Philip Groves continued negotiations with Molero by telephone and at least one personal visit to the latter's office, repeating the offer of $50.00 per acre. Eventually, to the knowledge of defendant's Division Exploration Superintendent, a Mr. Funkhouser, the lease bonus offered by California was increased to the sum of $75.00 per acre for the 150 acres desired. No agreement was reached between the negotiating parties and upon Desmond's return from vacation in early September, 1959, Desmond contacted plaintiff stating that he was prepared, on behalf of California, to make Delacroix Corporation an offer covering 1200 acres of the 8500 acre tract involved. A meeting of the parties was held in the offices of Delacroix Corporation attended by Desmond, Molero and Molero's personal attorney who was also attorney for Delacroix Corporation. On this occasion Desmond spoke of paying Delacroix a lease bonus of $25.00 per acre for a tract covering some 1200 acres and upon being queried by plaintiff's attorney regarding other terms of a lease answered that he, Desmond, would recommend a one-quarter royalty and in effect further stated that he felt the terms of a lease could be worked out between California and Delacroix Corporation. At this juncture plaintiff's attorney suggested to Desmond that the action of defendant in conducting the prior negotiations and in making the current proposal constituted a violation of the agreement between plaintiff and defendant subjecting defendant to the penalty provision provided for therein. Desmond disagreed with the conclusion of plaintiff's attorney and stated that if such be plaintiff's position he, Desmond, was no longer at liberty to continue the discussion. Desmond admitted, however, that before departing he suggested negotiations might be resumed provided plaintiff waived his claim to payment of the $37,500.00 penalty stipulated in the aforesaid agreement between plaintiff and defendant. No further negotiations *606 were held between the parties and plaintiff instituted this action which the trial court decided adversely to plaintiff's interest as hereinabove indicated.
Our learned brother below dismissed plaintiff's demand on the ground that conceding parol evidence to be admissible herein, he nevertheless concluded defendant made no offer to lease any portion of the Delacroix land for the reason that the proposal advanced by defendant's agents was incomplete and therefore could not have been transformed into an offer by its acceptance on behalf of the offeree, Delacroix Corporation. The reasons which our esteemed brother below assigned for the conclusion reached are herein set forth in their entirety, as follows:
"Conceding that parol evidence is admissible in this case, the "offer" made in this case was not one that could have been transformed into a lease if accepted.
"There was no term suggested and none could be implied. It was also lacking in other essential details. In legal effect it was nothing more than an effort to negotiate. Molero could have avoided placing himself in a position where his interest would have conflicted with those of Delacroix by merely suggesting that California submit a complete offer and not an inchoate and incomplete proposal. There must be judgment for defendant."
Able counsel for appellee maintains the trial court properly concluded there was in legal contemplation no offer to Delacroix Corporation and moreover that an offer can consist only of a concrete proposal including all terms and conditions of an inchoate agreement which, if accepted by the offeree without modification or change, is thereby transformed into a legally binding contract; in the instant case an oil, gas and mineral lease between appellee and Delacroix Corporation. Appellee further argues that an oil, gas and mineral lease being a type of contract which may be made only by written instrument, any offer to acquire such an agreement must also be in writing and consequently, the trial court erred in permitting the introduction of parol evidence to show such an offer and also erred in permitting the introduction of parol testimony to establish the alleged authority of defendant's agents and representatives to make such an offer. Defendant further contends that its agents did not in legal contemplation "make an offer" to Delacroix Corporation but rather that the actions of its representatives were merely negotiations or discussions of a prospective venture considering many aspects of a lease such as term and the various other phases of a transaction of such nature were never discussed or mentioned. Defendant also maintains that no authority of its agents to make such an offer was shown and finally, that since it is conceded that the phrase "make an offer" was selected and inserted into the agreement by counsel for appellant, any ambiguity concerning the meaning and intent of the parties respecting the phrase "make an offer" must be resolved against appellant herein.
Learned counsel for appellant concedes that an oil, gas and mineral lease must be in writing and cannot be established by parol. Plaintiff's esteemed counsel further acknowledges that under the law of Contracts, an offer to be legally binding must ordinarily be such that its acceptance by the offeree, without change or alteration, transforms the offer into a binding contract. However, able counsel argues that while such principles of law are well established and recognized (as contended by defendant), nevertheless said rules of law are without application to the instant matter. In this regard counsel for appellant reasons that since appellant does not herein seek to enforce an alleged oil, gas and mineral lease between appellant and appellee but merely wishes to establish that an offer was made by defendant to a third party thereby conferring upon appellant the collateral right to the penalty provided for in the agreement between plaintiff and *607 defendant, under such circumstances the offer need not necessarily be in such form as its acceptance would transform it into a binding contract. In substance counsel for appellant contends that the phrase "make an offer" was intended by the parties to mean not that a complete and acceptable offer was envisioned but that it proscribed any bona fide serious proposal or attempt by defendant to obtain from Delacroix a mineral lease within one year of the expiration of the lease optioned by defendant from plaintiff. In addition, learned counsel for appellant maintains that the parties were free to condition imposition of the penalty provided in the agreement upon any legally proper event, act or occurrence not expressly prohibited by law nor contrary to public policy and good morals and being free to do so they elected, by mutual consent, to base the right to the penalty upon defendant's making an offer within a specified period to Delacroix Corporation for a lease on all or any portion of a particular tract of land.
Before considering the respective positions of the litigants at bar we deem it desirable to set forth certain well recognized rules and principles of law which we believe applicable to the instant case.
Parties capable of contracting are free to bind and obligate themselves to any terms which are not in express violation of a prohibitory law and which are not contra bonos mores. Arkansas Fuel Oil Corporation v. Maggio, La.App., 141 So.2d 516.
When called upon to enforce or interpret a contract, the court must seek for and ascertain the mutual intention of the parties, if that be possible. Chicago Mill & Lumber Co. v. Lewis, La.App., 68 So.2d 913; Cooley v. Meridian Lumber Co., 195 La. 631, 197 So. 255.
In the interpretation of contracts, courts are bound to give legal effect to the true meaning and intent of the parties and in determining such intent all facts and circumstances relevant and pertinent are to be weighed and considered. Cardos v. Cristadoro, 228 La. 975, 84 So.2d 606.
The intention of parties to an agreement may be gathered from the words of the instrument evidencing the agreement and the manner in which it was executed, Bourg v. Hebert, 224 La. 535, 70 So.2d 116, and from other circumstances beyond the wording of the instrument. Boisseau v. Vallon & Jordano, 174 La. 492, 141 So. 38. See also LSA-C.C. Article 1950.
It is the court's duty to construe agreements in accordance with the parties' common intention rather than adhere to the literal meaning of the terms thereof. Dockson Gas Co. v. S. & W. Construction Co., La.App., 12 So.2d 847.
There can be no question but that defendant correctly contends that an offer to execute an oil, gas and mineral lease must be in writing to be legally binding and effective and that parol evidence of such an offer is not admissible to prove such an offer or its acceptance.
However, defendant's contention that the trial court erred in permitting the introduction of parol evidence to show the offers or overtures to Delacroix Corporation by defendant herein, is clearly without merit considering this action is not a suit by the alleged offeree, Delacroix Corporation, to enforce the asserted offer of defendant. The present suit does not affect, concern or deal with any right in or title to real property or with the duties, privileges and obligations of parties to an oil, gas and mineral lease. The present plaintiff does not herein seek to hold the alleged offerer to the terms of an offer to purchase or sell real property or an oil, gas and mineral lease, but rather plaintiff herein merely wishes to establish that such an offer was in fact made to a third party (Delacroix Corporation) and the mere making of such an offer by defendant, whether in writing or not, gave rise to the collateral right of plaintiff to demand the penalty provision provided for in the contract herein sued upon. As otherwise stated by learned counsel *608 for appellant, plaintiff is not seeking to enforce a purported offer to purchase an oil, gas and mineral lease but rather plaintiff, a third party to the alleged offer, wishes to establish that the making of an offer (oral or written) by defendant to a third party violates the terms of an entirely separate and distinct agreement between plaintiff and defendant herein.
We believe the trial court properly admitted the evidence to which able counsel for appellee objected as hereinbefore shown. The rule which forbids the proving of title to real estate by parol evidence is inapplicable to parol evidence offered for some other purpose for which parol evidence is relevant, admissible and competent and which parol evidence pertains only collaterally to real property and does not seek to either establish, affect or enforce title to or rights respecting real estate. Thus we note that in Landry v. Blache, 17 La.App. 670, 137 So. 208, it was held that the principal of an agent orally authorized to purchase property was held liable for the commission due the broker with whom the agent dealt upon the principal's failure to perform the obligation to purchase. Conceding that the agent's lack of proper authority was an effective bar to enforcement of the agreement to purchase, the court nevertheless held said lack of authority was no bar to enforcement of the cohateral obligation to pay the broker's commission. To the same effect is the holding in Whatley v. McMillan, 152 La. 978, 94 So. 905, wherein the Supreme Court held enforceable a verbal contract to pay for the services of one engaged to secure a purchaser for real property. Again the court held that since the agreement did not affect real estate in any way but merely provided for the personal services of plaintiff for an agreed consideration, it was subject to proof by parol evidence. To the same effect see the more recent decision of Jones v. Jones, La. App., 126 So.2d 437.
The evidence in the case at bar convinces us beyond all reasonable doubt that by the term "make an offer" as appears in the contract herein sued upon, the parties intended that no bona fide serious attempt would be made by defendant to obtain a lease from Delacroix Corporation within one year of expiration of the lease held by plaintiff and optioned from plaintiff by defendant herein. It is clear from the record that during the negotiations which culminated in the subject contract, the question arose concerning the possibility that defendant might permit the lease to expire and after expiration obtain a new lease directly from the owner. It was because of this obvious possibility that plaintiff rejected the initial offer of defendant whereupon defendant proposed the initial penalty clause conditioned upon defendant's permitting the lease to expire without selection or commencing of drilling operations and defendant's obtaining of a new lease from the owner within a year.
Defendant's agents and representatives were fully aware and apprised of appellant's desire to eliminate the possibility of a situation in which his personal interests would be placed in conflict with those of the corporation which appellant headed and, further, that appellant did not wish to be faced with the prospect of making a decision under circumstances wherein his individual interests were in juxtaposition to those of Delacroix Corporation. More precisely, defendant's agent knew that plaintiff desired to eliminate from the contract any provision which would make payment of the liquidated damages stipulated contingent upon any action on plaintiff's part as president of Delacroix Corporation. Defendant's representatives were also aware that since, in such capacity, plaintiff would be called upon to negotiate on the part of the corporation a lease the execution of which would determine plaintiff's right to the penalties presently sought herein, appellant had no desire to be placed in such position of conflict of interests.
There can be little question but that defendant's agents knew and understood that to avoid being placed in such a position of *609 conflicting interests and divided loyalties, plaintiff required the phrase "obtain a new lease" to be changed to read "make an offer * * * to obtain a new lease" for in such latter event the penalty would be incurred by the unilateral action of defendant in making an offer and would in no way involve the offeree's acceptance or rejection thereof.
The term "make an offer" as used in the agreement in question was clearly intended to refer to certain conduct, action or behavior on the part of defendant which would render defendant liable for the penalty stipulated upon the mere performance of the act proscribed.
That defendant was serious in its attempt to secure a new lease from Delacroix Corporation is amply demonstrated by the testimony of its employee Desmond. In this regard his testimony shows that defendant was very much interested in obtaining a lease on a particular eighty acres which was included in the 150 acres which defendant first offered to lease for $50.00 per acre. The reason for such interest lay in the fact that defendant was then planning to drill a well on a nearby state lease and considered that the 80 acres in which defendant was particularly interested would be desirable under the circumstances. See Transcript Page 56 and also Page 62. Defendant's interest was so keen that the initial offer of $50.00 per acre was subsequently increased to $75.00 per acre for the same 150 acre tract.
According to Mr. John W. Desmond, Division Land Superintendent for defendant corporation, penalty provisions of the kind involved herein are rather common in the oil and gas industry. Granting that the change in terminology insisted upon by counsel for appellant was a departure from that suggested by defendant in the initial draft of the contract, and granting further that, as suggested by appellant, the terminology was a deviation from the ordinary, the change, if mutually agreeable, must nevertheless be enforced according to the will, intention and understanding of the parties, irrespective of its harshness so long as it does not contravene either positive law, good morals or public policy. Arkansas Fuel Oil Corporation v. Maggio, La.App., 141 So.2d 516.
The word "offer" is defined in The American Everyday Dictionary, (1951) Edition, as follows:
"1. to present for acceptance or rejection.
2. to propose or volunteer (to do something).
3. to sacrifice.
4. to present; put forward.
5. to attempt to inflict, do, or make.
6. to present for sale.
7. to tender or bid as a price.
8. to make an offer.
9. to make an offer of marriage.
10. to occur.
11. to sacrifice.
12. act of offering.
13. a proposal of marriage.
14. a bid.
15. an attempt."
Clearly, therefore, the word "offer" is susceptible of more than one interpretation. It is a well established rule of law that where the words of a contract are susceptible of more than one meaning courts must give them the interpretation that carries out the object and purpose of the contract. Robbert v. Equitable Life Assur. Soc. of United States, 217 La. 325, 46 So. 2d 286.
Although it is a settled rule of construction that words in an agreement or contract are usually interpreted according to their ordinary and customary meaning, clauses couched in general terms, which, if taken literally would lead to unreasonable consequences, must be construed according to what, under the circumstances, was most probably the intention of the parties. Losecco v. Gregory, 108 La. 648, 32 So. 985.
Under the circumstances obtaining in the case at bar we have no hesitancy in concluding *610 that the term "make an offer" as employed in the contract in question was free of all ambiguity and uncertainty insofar as the contracting parties are concerned. It is equally clear that the parties intended the term "make an offer" to mean and refer not to a legally binding written offer, but rather any bona fide serious proposal, suggestion, or attempt of defendant to obtain a lease from Delacroix Corporation within a period of one year. The words "make an offer" have been shown to comprehend the word "offer" in a broad, general non-technical sense rather than in a technical, restricted sense which would render the entire penalty clause meaningless from a practical standpoint. To adopt defendant's version as to what was intended by the term in question is to conclude that defendant was free to obtain a lease from Delacroix Corporation, without incurring the penalty in question, so long as no formal written offer, complete in all its details was tendered to Delacroix Corporation. Such an interpretation would defeat the obvious intention of the parties. Moreover, to hold as defendant argues is to further conclude that irrespective of defendant's negotiations to obtain a lease from Delacroix Corporation, so long as said latter corporation advanced a single proposal of its own, defendant could not in legal contemplation be considered the offeror and consequently the penalty provision would not attach.
Defendant's efforts or attempts to obtain a lease were concerted, bona fide, serious and persistent. The overtures of defendant's agents placed plaintiff-appellant in a position of conflict of interests which, by the terms of the contract, he clearly sought to avoid. As a consequence defendant has incurred the penalty therein agreed upon.
The contention of defendant that its agents were without authority to negotiate for the lease from Delacroix Corporation is patently without merit. It will be recalled that the same agents who negotiated the purchase of Molero's lease subsequently attempted to lease from Delacroix Corporation directly. Moreover, it appears that defendant's said representatives, in attempting to lease from Delacroix Corporation, were acting with the express knowledge, consent and acquiescence of defendant's Division Exploration Superintendent, Funkhouser. From prior experience Molero had every reason to presume that defendant's agents having negotiated the prior agreement (in which the penalty clause was included) were clothed with authority to represent defendant in their efforts to secure a lease from the corporation which plaintiff represented.
It is the well established jurisprudence of this state that the measure of an agent's authority is the apparent authority with which his principal has invested or clothed him and not the secret and private instructions or limitations to which the principal and agent have agreed. However binding such secret, undisclosed instructions or limitations may be as between principal and agent they are ineffective against third persons who deal with the agent in good faith sans knowledge thereof. LSA-C.C. Article 3000; Busby v. Walker, La.App., 84 So.2d 304; Interstate Electric Company v. Frank Adam Electric Co., 173 La. 103, 136 So. 283.
It follows, therefore, that the judgment of the trial court is erroneous and must be set aside.
For the reasons hereinabove set forth, it is ordered, adjudged and decreed that the judgment of the trial court rejecting and dismissing the demand of appellant, Camille Silvera Molero, Testamentary Executrix of the Succession of Manuel Molero, deceased, be and the same is hereby annulled, reversed and set aside and judgment rendered herein in favor of appellant, Camille Silvera Molero, Testamentary Executrix of the Succession of Manuel Molero, deceased, and against defendant, The California Company, in the full sum of $37,500.00 together with legal interest thereon at the rate of five (5%) per cent per annum from date *611 of judicial demand, until paid; costs of this appeal as well as the costs in the court below to be paid by defendant-appellee, The California Company.
Reversed and rendered.