331 So.2d 550 (1976)
Charles R. CRAMER and Murray J. Cadenhead, d/b/a Cramer & Cadenhead Realtors
v.
Gregory GUERCIO et al.
No. 10519.
Court of Appeal of Louisiana, First Circuit.
April 12, 1976.
Rehearing Denied May 24, 1976.
*551 Cornelius J. Hyde, III, Baton Rouge, for appellants.
Wm. J. Doran, Jr. and Wm. T. Kivett, Baton Rouge, for Guercios.
Chapman L. Sanford, Baton Rouge, for Board of Realtors.
Before SARTAIN, ELLIS, BLANCHE, COVINGTON and LOTTINGER, JJ.
For Dissenting Opinion, see 336 So.2d 908.
BLANCHE, Judge.
Plaintiffs-appellants, Charles R. Cramer and Murray J. Cadenhead, d/b/a Cramer & Cadenhead Realtors, brought this suit for a realtor's commission which they claim was earned as a result of their efforts leading to the sale of certain premises owned by defendants-appellees, Gregory Guercio, Phil Guercio, Tommye Guercio Galloway, Robert Joseph Guercio and Mark David Guercio.
Thomas J. Guercio, the father of the defendants, died on October 25, 1972, leaving the defendants as sole heirs. The Succession included a residence at 624 Longwood Drive, Baton Rouge, Louisiana. After gaining possession of the Longwood Drive property, the heirs attempted to sell same themselves but failed. In connection therewith, Mrs. Ann Naquin, a sales representative of the plaintiffs, approached the defendants with regard to listing the house for sale with Cramer & Cadenhead Realtors.
On August 15, 1973, a standard ninety-day realtor's listing agreement was signed by Phil and Gregory Guercio and Tommye Guercio Galloway, listing the house for sale at the price of $53,000. The minor heirs Robert Joseph Guercio and Mark David Guercio were not parties to this agreement.
In connection with the listing, Mrs. Naquin held an "Open House" on November 4, 1973, to show the house to prospective purchasers. Through this means Mr. and Mrs. Vincent F. Kuetemeyer learned the property was for sale, and they were interested in viewing the same. Prior to going to the "Open House," they contacted a personal friend Tony Bourgeois, who was also a realtor and had been assisting them in their search for a house. Realtor Bourgeois advised them concerning the specifications of the house as listed in the Baton Rouge Board of Realtors Multiple Listing Service. On viewing the house, the Kuetemeyers decided to make an oral offer through Mrs. Naquin, which offer was refused by the defendants.
When Bourgeois learned that the Kuetemeyers had made an offer directly to another relator, he advised them that ethically he could not represent them in the purchase of that particular house and that henceforth they should deal exclusively with Mrs. Naquin.
On November 11 another "Open House" was held by Mrs. Naquin and the Kuetemeyers made a written second offer of $42,500, which was also refused.
The Kuetemeyers then abandoned attempts to purchase the house since they felt their written offer was their top price and also because they were of the opinion that they could not come to terms with Mrs. Naquin.
On November 15 the exclusive listing of the house with plaintiffs' agency expired and the listing was then changed to another realty firm, The Guaranty Agency, Inc.
After this change, Bourgeois again began active representation of the Kuetemeyers with regard to the purchase of the house, and on December 14 Bourgeois, in *552 cooperation with Guaranty, submitted a written offer of $46,000 on behalf of the Kuetemeyers. That offer was accepted by the Guercio heirs on December 17, 1973.
The sale to the Kuetemeyers took place on March 22, 1974, and thereafter Cramer and Cadenhead sued for the realtor's commission allegedly due them in the sum of $2,760.
The trial judge dismissed plaintiffs' suit at their costs, and from this judgment plaintiffs have appealed. We affirm.
On appeal the plaintiffs contend that the trial judge was in error in not finding that plaintiffs were the procuring cause of the sale and, alternatively, was in error for not finding that the listing agreement gave them a right to receive a commission for as long as six months after the expiration of their listing agreement, if the purchasers had become interested in the property as a result of their efforts in advertising it.
With regard to plaintiffs' first assignment of error, we inquire whether plaintiffs were the procuring cause of the sale to the Kuetemeyers.
It is well settled in our law that a realtor is entitled to a commission, even though the sale is consummated after termination of the agency contract, if the realtor was the procuring cause of the sale. Munson v. Alello, 199 So.2d 577 (La.App. 1st Cir. 1967); Searcy v. Jacobs, 151 So.2d 166 (La.App. 4th Cir. 1963); Rolston v. Buff, 130 So.2d 732 (La.App. 1st Cir. 1961); Sleet v. Williams, 291 So.2d 495 (La.App. 3rd Cir. 1974).
Procuring cause refers to the efforts of a broker in introducing or interesting a purchaser and means that negotiations eventually leading to a sale must be the result of some active effort of the broker. Womack Agencies, Inc. v. Fisher, 86 So.2d 732 (La.App. 1st Cir. 1956). However, the mere fact that a sale may have been in some way aided by the previous efforts of the broker does not of itself entitle the broker to a commission. Bullis & Thomas v. Calvert, 162 La. 378, 110 So. 621 (1926). The following language defining "procuring cause" is found in Sleet v. Williams, supra, and is cited from 12 C. J. S. Brokers § 91, page 208:
"As used in that branch of the law relating to brokers' commissions, the terms `procuring cause,' `efficient cause,' and `proximate cause' have substantially, if not quite, the same meaning and are often used interchangeably; they refer to a cause originating or setting in motion a series of events which, without break in their continuity, result in the accomplishment of the prime object of the employment of the broker, which may variously be a sale or exchange of the principal's property, an ultimate agreement between the principal and a prospective contracting party, or the procurement of a purchaser who is ready, willing and able to buy on the principal's terms." (291 So.2d at 498)
A review of the evidence presented herein convinces us that the plaintiff is not one who set in motion an uninterrupted series of events which resulted in the ultimate sale or procurement of a purchaser ready, willing and able to buy on the vendor's terms. Admittedly, the Kuetemeyers were interested in the property when they first noticed the plaintiffs' "For Sale" sign and attended their "Open House," and in consequence thereof they made two offers, one oral and one written, and both were submitted to the owners by the agents and both were rejected, as neither conformed to the terms of the listing agreement. Subsequent to the rejection of said offers, the plaintiffs lost the exclusive listing on the property, being replaced by Guaranty Agency. With the intervention of the third realtor, Tony Bourgeois, Guaranty was able to obtain acceptance of the Kuetemeyers' offer of $46,000. The plaintiffs were not in any manner involved with the negotiations which took place subsequent to *553 their replacement by Guaranty, and as a result of the Guaranty and Bourgeois efforts, an offer $3,500 higher than the best offer obtained by plaintiffs was finally accepted by the owners.
We conclude that the sale was not the result of some active effort of the plaintiffs but instead resulted from the combined efforts of the two new realtors, Bourgeois and Guaranty Agency. These realtors entered the picture only after negotiations among the owners, the plaintiffs and the Kuetemeyers had terminated in failure and after plaintiffs' exclusive listing had expired.
This is not a case where the owners fraudulently sought to prevent the plaintiffs from recovering their commission; in fact, the owners did not even know the Kuetemeyers were the prospective purchasers in the two offers obtained by plaintiffs.
The finding by the trial judge that plaintiffs were not the procuring cause of the instant sale, a finding which by its very nature is factual, has not been shown to be manifestly erroneous and is correct.
Plaintiffs' alternative contention is also without merit. It is based upon the following language in the agreement:
"I/We further agree to pay commission as above stipulated in event of sale of said property by me/us within six months after the expiration of this agreement, provided purchaser has become interested in said property as a result of the efforts of advertising of said agent during the active term of this listing, and I/We also agree to refer all prospects to the listing Realtor." (Exhibit P-1Emphasis supplied)
Since the subject sale occurred within six months of the expiration of the listing agreement, plaintiffs assert that they are entitled to said commission.
It is strenuously argued by defendants that the foregoing six-month clause has no application to the case where the owners' duly authorized real estate agent makes such a sale. In proof thereof, the defendants attempted to introduce parol evidence to establish that the subject clause pertains only to a sale by the owners without the intervention of a new realtor, unlike what occurred herein. This attempt was met by an objection from the plaintiffs as an effort to circumvent the language of the contract. The objection was sustained by the trial judge, and thereafter the evidence was proffered by the defendants.
Our first impression is that there is nothing ambiguous about the words "me/us," and ordinarily we would assume them to include one's agent. However, the evidence offered under the Proffer of Proof is definitely to the contrary. Witnesses called by the defendants, all qualified in the real estate profession and knowledgeable concerning the practice with reference to the foregoing clause, categorically testified that the purpose of the clause was to prevent an owner from contacting a prospective purchaser after the listing had expired so as to deprive a listing realtor of his commission and that the clause had no application to a real estate agent operating under a valid listing.
Serious consequences to a good faith property owner will result if the six-month clause is applicable to an owner's duly authorized real estate broker. A property owner listing a house with a realtor could possibly be liable for a double commission or even additional commissions if he subsequently changes realtors after the initial listing expires and the property is sold within six months thereafter by the new listing realtor to someone who had been interested in the property by the first realtor or who had submitted an offer, although far less than the ultimate sales price of the property. To say the least, sanctioning such a result is an absurdity, and that would be the precise result here if we require the good faith property owners in the instant case to pay a double commission.
*554 The listing agreement in question is an agency contract between the owners and an agent and was prepared by the agent primarily for the agent's benefit. Considering that it was written primarily in the real estate agent's interests, we are of the opinion that the interpretation of the language given by defendants' witnesses is the most logical.
To the extent that parol evidence was used to ascertain the intent of the words "me/us" in the six-month clause, we believe parol evidence was admissible. The words "me/us" are susceptible of more than one interpretation, as they could pertain solely to the owners acting in their own behalf or they could refer to a sale like the one in the instant case accomplished through the owners' agent. Parol evidence is admissible to ascertain the meaning of language susceptible of more than one interpretation. Molero v. California Company, 145 So.2d 602 (La.App. 4th Cir. 1962).
In our attempt to ascertain the meaning of the subject clause, ambiguity in this real estate contract must be construed against the plaintiffs who prepared the same. Kuhn v. Stan A. Plauche Real Estate Company, 249 La. 85, 185 So.2d 210 (1966).
In the Molero case, supra, we find other legal precepts that are applicable here:
"When called upon to enforce or interpret a contract, the court must seek for and ascertain the mutual intention of the parties, if that be possible. Chicago Mill & Lumber Co. v. Lewis, La.App., 68 So. 2d 913; Cooley v. Meridian Lumber Co., 195 La. 631, 197 So. 255.
"In the interpretation of contracts, courts are bound to give legal effect to the true meaning and intent of the parties and in determining such intent all facts and circumstances relevant and pertinent are to be weighed and considered. Cardos v. Cristadoro, 228 La. 975, 84 So.2d 606.
"The intention of parties to an agreement may be gathered from the words of the instrument evidencing the agreement and the manner in which it was executed, Bourg v. Hebert, 224 La. 535, 70 So. 2d 116, and from other circumstances beyond the wording of the instrument. Boisseau v. Vallon & Jordano, 174 La. 492, 141 So. 38. See also LSA-C.C. Article 1950.
"It is the court's duty to construe agreements in accordance with the parties' common intention rather than adhere to the literal meaning of the terms thereof. Dockson Gas Co. v. S. & W. Construction Co., La.App., 12 So.2d 847.
* * * * * *
"* * * It is a well established rule of law that where the words of a contract are susceptible of more than one meaning courts must give them the interpretation that carries out the object and purpose of the contract. Robbert v. Equitable Life Assur. Soc. of United States, 217 La. 325, 46 So.2d 286.
"Although it is a settled rule of construction that words in an agreement or contract are usually interpreted according to their ordinary and customary meaning, clauses couched in general terms, which, if taken literally would lead to unreasonable consequences, must be construed according to what, under the circumstances, was most probably the intention of the parties. Losecco v. Gregory, 108 La. 648, 32 So. 985." (Molero v. California Company, 145 So.2d at 607, 609)
Under the circumstances obtaining in the case at bar, we have no hesitancy in concluding that the six-month clause pertains only to a sale by owners and does not apply to a case where the real estate agent operating under a valid listing agreement sells property to a purchaser who has initially *555 become interested in the property as the result of the efforts of the first listing agent.
For the above and foregoing reasons, the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.
LOTTINGER, J., dissents with written reasons.
ELLIS, J., dissents for reasons assigned by LOTTINGER, J.