WATKINS, Judge.
This is an action brought by Ginger Hud-man against Century 21 Central, Realtors,[1] Baton Rouge, Louisiana, for commissions and compensation she claims she is entitled to as former sales manager for defendant. Defendant filed a reconventional demand with respect to past overpayment to plaintiff on one transaction, which amount is not seriously questioned. The trial court awarded Mrs. Hudman the sum of $4,412.69 less $162.32 due defendant in its reconventional demand. Defendant appealed contending plaintiff was not entitled to judgment in any sum, and plaintiff answered the appeal contending she was entitled to the additional sum of $806.25 as commission on a sale of Lot 128-A in Avalon Subdivision.
We agree with the trial court that plaintiff’s claim for a commission on the lot in Avalon Subdivision was not sufficiently proven. Accordingly, we affirm the action of the trial court in denying that claim.
The claim in the sum of $4,412.69 for compensation presents an entirely different problem.
In January 1978 Ms. Hudman, who had been working in real estate for seven or eight years, was hired by Century 21 Central, Realtors, as sales manager. The record establishes that a sales manager of a real estate agency has the duties of recruiting, training, supervising, and lending advice to sales agents for the firm. Normally, she is not to compete with the sales agents for commissions, but is to serve in a supervisory capacity. Ms. Hudman was hired as sales manager of the defendant firm by verbal contract. It was clearly understood by Ms. Hudman that she was not to sell property, with the exception mentioned below, and that she was to hire, supervise, and advise sales agents, who were to handle the sales themselves. There was one exception, in special cases with express approval of the higher management, she was to arrange and handle for the sale of property herself, and receive a sales commission for so doing.[2]
The agreement of Ms. Hudman and Century 21 Central with respect to compensation was that Ms. Hudman was to receive a salary as sales manager of $1,200.00 per month for six months, and thereafter, she was to receive 10% of “company dollar”, that is, the sum retained by Century 21 Central as commissions after paying sales and listing agents and other overhead expenses. The testimony shows that at the time the parties entered into the contract of employment no mention was made of what was to be done with regard to sales that were pending by virtue of the fact that purchase agreements had been signed, but in which final closing papers had not been executed at the time of termination.
On or about May 31, 1979, Ms. Hudman’s employment was terminated. At that time many properties were subject to purchase agreements that had not been carried to final closings. The sales of these properties were later closed. Ms. Hudman upon her termination, was paid only for those sales that had actually been closed before her employment was terminated. In the present suit, Ms. Hudman seeks compensation based on 10% of company dollar on sales subject to purchase agreements executed before her employment terminated that were closed after her employment terminated.
As stated in the verbal contract of employment the parties had no agreement with respect to the effect of termination of employment upon compensation for company dollar received on properties subject to purchase agreements before termination but as to which the closings themselves were executed after termination.
*571 Articles 1964, 1965, and 1966 of the Louisiana Civil Code govern what is to be due when a contract is silent on a particular facet of its terms:
“Art. 1964. Equity, usage and law supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from one of these sources.
“Art. 1965. The equity intended by this rule is founded in the Christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity.
“Art. 1966. By the word usage mentioned in the preceding articles, is meant that which is generally practiced in affairs of the same nature with that which forms the subject of the contract.
“House rent in some cities is generally paid by the month; in others by the quarter. In a contract for the hire of a house, without expressing when the rent was to be paid, the deficiency would be supplied by proof of the usage, but if a contrary intent appear in the contract, the usage would not contravene it.”
Applying those codal articles, the trial court in written reasons for judgment stated in part:
“While the defendant presented several witnesses who indicated that it was not customary for the sales manager to share in sales completed after the association was severed, these witnesses agreed that the arrangement under which they operated had agreements covering this point. It seems to this court that equity would dictate that the plaintiff should receive this service fee in the absence of a specific provision to the contrary.”
The first sentence of the court’s reasons quoted above necessarily implies that the testimony established that it was the custom (or usage) in the business that a sales manager would not be paid for sales pending but not closed until after termination of the employment. We do not find that the testimony of these witnesses supports this conclusion, because it clearly fails to establish a custom or usage in the real estate agency business on that particular point one way or the other, either locally in the Baton Rouge area or state-wide.
However, we find no fault in the trial court’s finding that equity required recovery by Ms. Hudman under the facts of the present case. The facts supporting such recovery are many. At the time Ms. Hud-man was hired, Century 21 Central was a relatively new real estate firm having only four or five sales agents. At the time Ms. Hudman was terminated, Century 21 Central had twenty-five full and part-time sales agents. The additional sales agents were recruited and trained almost totally through the efforts of Ms. Hudman. Furthermore, she gave detailed advice and instructions to the sales agents throughout the sales process. It appears for these reasons Ms. Hudman’s efforts were instrumental in obtaining most of the purchase agreements. Furthermore, it might be noted Ms. Hudman brought her former clients to the firm, whom in many cases she did not herself do business with directly apparently because of her agreement not to compete for commissions with sales agents. Sales agents are clearly by law[3] and custom entitled to receive a commission on partly closed transactions, if they are the procuring cause of the sale. We find from the facts of this case that equity dictates a recovery by Ms. Hudman, her many and varied activities having been the procuring cause of the sales pending in the present case.
The clear testimony at the trial establishes company dollar for the transactions in *572 question of $27,858.23. Ten percent of that amount would come to $2,785.82, not $4,412.69, as was awarded by the trial court.
Accordingly, the judgment of the trial court is amended to reduce the judgment in favor of Ms. Hudman and against Century 21 Central, Realtors from the sum of $4,412.69 to $2,785.82. Judgment on the reconventional demand in favor of Century 21 Central, Realtors in the sum of $162.32 on its reconventional demand is affirmed. All costs shall be paid by Century 21 Central, Realtors.
AMENDED AND AFFIRMED.

. According to defendant’s answer, its correct name is Central of Louisiana, Inc., d/b/a Century 21, Central, Realtors.

. Ms. Hudman contends that the Avalon property constituted such an exception. However, her claim was not established by a preponderance of the evidence.

. Cramer v. Guercio, 331 So.2d 550 (La.App. 1st Cir. 1976), 336 So.2d 908 (dissenting opinion of Lottinger, J.); Sleet v. Gray, 351 So.2d 286 (La.App. 3d Cir. 1977).