SHORTESS, Judge.
Builders Center, Inc. (plaintiff) has brought this devolutive appeal from a judgment which dismissed its claim for a real estate commission allegedly due its salesman, Arthur C. Cearley.[1] The commission was allegedly due pursuant to a contract between Cearley and Robert J. Farris (defendant), and Ann N. Farris. McDonald’s Corporation (McDonald’s) was joined as a third party defendant by defendant. When the trial court dismissed plaintiff’s suit, the third party demand was also dismissed. No appeal was taken from the dismissal of the third party demand.
Earlier, this case was before us in Cearley v. Farris, 392 So.2d 115 (La.App. 1st Cir. 1980), when plaintiff appealed from a summary judgment which dismissed its suit. We reversed and remanded the case for a trial.
Cearley, a real estate salesman, had, over the course of several years, obtained numerous sites for McDonald’s throughout the State of Louisiana. In 1974, McDonald’s Louisiana real estate representative, Donald D. Pope, contacted Cearley to seek his assistance in locating a site in Hammond, Louisiana. Cearley investigated potential sites in Hammond and then talked to Anh Farris, operator of Farris Cafe on Highway. 190 and West Thomas Street in Hammond, about purchasing this site. He was told that Robert Farris owned the property. Shortly thereafter, he met with Robert Far-ris, Donald Pope, and Robert Tillery (Farris’ attorney) at Tillery’s Hammond office. At that time, Robert Farris said he was only interested in a long-term lease. When the parties could not agree upon a lease con-tract, Farris said he would consider selling. A sales price of $120,000.00 was ultimately negotiated. Robert Farris did not want to pay any real estate commission, and Cearley was concerned about that fact. Discussions between Cearley and Tillery resulted in a series of letters, commencing September 18, 1974, when Tillery wrote Cearley and said:
“It is my understanding that your commission will be due at the time of final closing and not at any time before.”
Again, on October 15,1974, Tillery wrote in a letter to Cearley:
“To confirm our conversations, both Robert Farris and Ann Farris are aware that your commission of six per cent will be due at the time of the closing of the final Act of Sale. This will amount to $6,000.00 from Robert Farris and $1,000.00 from Ann Farris."
After receiving a telephone call from Cear-ley, Tillery then amended the figures contained in the October 15 letter, in his letter dated October 28:
“In accordance with your telephone call, you are correct that the six per cent commission from Ann Farris will be $1,200.00, and not $1,000.00 as I had set *904 forth in my letter to you of October 15, 1974.”[2]
The contract to sell was signed in early October, 1974, but the Farris’s had certain language relating to sanitary sewer services deleted or “X”ed out of the McDonald’s standard contract form. McDonald’s insisted that the seller provide an adequate sewer tie-in. Problems over this sewer line delayed passing of the sale. On December 13, 1974, Pope wrote a letter to Tillery confirming that McDonald’s was no longer interested in the property under the present circumstances (Farris’ inability to have a sewer line brought to the property). Pope also indicated that McDonald’s would be willing to proceed only if a sewer line was at the property line and available for hook up to a gravity flow system. Tillery responded on December 30 and advised that he considered Pope’s December 13 letter to be a rejection of Farris’ offer to sell the property for $120,000.00. He concluded that:
“We are attempting to remedy the sewer problem and I have taken it upon myself to spearhead this effort.”
After that time, all efforts toward resolving the sewer line problem were conducted by Tillery directly with Pope. Cearley was never again involved. Tillery worked on and finally resolved the problem, after Far-ris agreed to McDonald’s proposition to escrow sufficient funds which were coming to him out of the purchase price to pay for the sewer line.
The sale was ultimately passed on September 23, 1975. The Farris’ did not net $120,000.00, as the sewer line cost $20,300.00 which was deducted from the sales price. Ann Farris received $20,000.00 for her leasehold interest, and Robert Farris received the balance of $79,700.00.
Defendant urges this court to find that there was no error in the trial court’s finding that the original sales agreement was cancelled by mutual consent in December, 1974; that the ultimate sale was in accordance with a price and conditions which did not appear originally; and that Cearley’s efforts could not have been considered the procuring cause for the subsequent agreement. The defendant cites Cramer v. Guercio, 331 So.2d 550 (La.App. 1st Cir.1976), as the leading case in support of his contentions. Cramer is inapposite on one crucial element — there, the prospective purchasers had terminated negotiations with the owners, and the reál estate agent’s exclusive listing agreement had expired. Here, Till-ery continued to work on the sewer problem until it was resolved, so that the parties could finalize their agreement for the same gross price. Pope testified that negotiations were never broken off but continued until the matter was finally resolved.
The following principles of real estate brokerage commission law are well settled. Sleet v. Williams, 291 So.2d 495 (La.App. 3rd Cir.1974), states:
“ ‘Procuring cause refers to the efforts of a broker in introducing, producing, finding, or interesting a purchaser, and means that negotiations which eventually lead to a sale, must be the result of some active effort of the broker.’ Womack Agencies v. Fisher, 86 So.2d 732, 734 (La. App. 1st Cir.1956).
Procuring cause is also defined in 12 C.J.S. Brokers § 91, page 208 as follows: ‘As used in that branch of the law relating to brokers’ commissions, the terms procuring cause, efficient cause, and proximate cause have substantially, if not quite, the same meaning and are often *905 used interchangeably; they refer to a cause originating or setting in motion a series of events which, without break in their continuity, result in the accomplishment of the prime object of the employment of the broker, which may variously be a sale or exchange of the principal’s property, an ultimate agreement between the principal and a prospective contracting party, or the procurement of a purchaser who is ready, willing, and able to buy on the principal’s terms.’ ”
291 So.2d at 498
Also, we quote from Keating v. Lachney, 216 So.2d 906 (La.App. 1st Cir.1968):
“It has also been well established that a real estate broker is entitled to a commission if he is the procuring cause of the sale even though the transaction is consummated by the parties at a different price from that procured by the broker. Kaufman Agency v. Viccellio, 174 So. 709 (La.App.1937).
A real estate broker is considered the procuring cause of a sale and is entitled to a commission if he brings the parties together even though the parties conduct the final negotiations themselves and even though the broker does not have a listing or exclusive agency agreement.” 216 So.2d at 909-910
This record reveals that Cearley contacted Farris, advised him of McDonald’s interest in the property, and thereafter met with Farris and Pope at Tillery’s office to negotiate. Negotiations culminated in a series of signed sales contracts. The parties certainly had been brought together through Cear-ley’s efforts. Defendant reluctantly conceded that he knew or could have known about Tillery’s correspondence with Cear-ley, wherein his commission was assured if the sale was finalized.
After McDonald’s advised Tillery that it was no longer interested in the property without the sewer line, Tillery took it upon himself to resolve the matter. Ultimately, the sale was passed between the same parties, and for the same $120,000.00 purchase price originally agreed upon. We note that the amount received by defendant was $120,000.00, less the cost of constructing the sewer line, which cost was $20,300.00.[3]
We find that the original sales agreement was not cancelled but was modified by mutual consent only to the extent that defendant agreed to pay for the cost of bringing the sewer line to the property. We further find that Cearley’s efforts were the procuring cause of the sale and that the modification was not a sufficient intervening cause to destroy defendant’s obligation to Cear-ley.
Accordingly, there will be judgment herein in favor of Builders Center, Inc., and against Robert J. Farris for $4,782.00; in favor of Builders Center, Inc. and against Ann N. Farris for $1,200.00, together with legal interest on each amount from date of judicial demand until paid. All costs are taxed to Robert J. Farris and Ann N. Far-ris.
REVERSED AND RENDERED.

. Originally, Cearley was also a party plaintiff but was dismissed from this suit on an exception of no cause of action, on the ground that only a licensed real estate broker, i.e., Builders Center, Inc., had a cause of action for collection of any commission that might be due. That judgment is final.

. On cross examination, defendant admitted:
“A. Well, I didn’t agree to pay it I’m telling you that, now I won’t say it wasn’t without my permission ... but if we had promised the man all this money why wasn’t he there at the day of the sale since he was doing the selling and he’s ...
BY THE COURT:
Mr. Farris, to conclude this thing I’m going to reserve the questions for the counsel to you, and I will let your attorney redirect you at a later time, all right sir.
A. Thank you sir.
BY MR. DORNIER:
Q. You are saying that you might have authorized Robert, your attorney, to send such a letter?
A. I might, and I might not, I don’t remember .. but that was in the first agreement.
Q. That’s all I have Judge.”

. Cearley’s six percent commission should be calculated on the net amount due of $99,700.00, rather than the gross amount of $120,000.00.