HAWTHORNE, Justice.
 

 In this appeal this court has before it for determination the question of the ownership of one-half of the minerals in a tract of approximately 8,700 acres in Terrebonne Parish, Louisiana, claimed by both the plaintiff Harry Bourg and the defendant Terrebonne Land Development Corporation, and also the question of whether this defendant had authority as an agent of plaintiff Bourg to execute a lease made to the defendant J. J. Hebert on April 19, 1948, covering 881.20 acres of the tract.
 

 Plaintiff Harry Bourg, owner of the land, claims that the defendant Terrebonne Land Development Corporation has lost its one-half of the mineral rights in all of the
 
 *540
 
 land, except in certain tracts on which there has been development, by non-user for a period of more than 10 years, and he pleads 10 years’ liberative prescription. The district court concluded that, as to all of the land except one small non-contiguous tract, prescription had been interrupted by mineral development, that is, by the drilling of wells and the production of oil and gas, and dismissed plaintiff’s plea of 10 years’ liberative prescription except as to the small tract. Judgment was accordingly rendered recognizing plaintiff Bourg and the defendant Terrebonne Land Development Corporation each to be the owner of one-half of the minerals in the property except those in the small tract which was non-contiguous to the remaining portion of the property. As to this small, tract the court recognized plaintiff to be the owner of all the minerals. The court also held that the defendant Terrebonne Land Development Corporation was without authority to execute a lease covering the property, and that the lease executed by that defendant to the defendant J. J. Hebert was consequently invalid as to Bourg’s undivided one-half interest.
 

 By the plaintiff’s appeal and the defendants’ answer to the appeal, the issues as set out above are now before this court.
 

 Plaintiff Harry Bourg acquired the lands involved in this controversy from Charles W. Buckley and other members of the Buckley family by 10 different acts of purchase between January 10, 1928, and December 21, 1934. In each of these acts the vendors
 
 reserved all the minerals
 
 in the property conveyed. Some of the conveyance's included non-contiguous tracts, and it is undisputed that from all the transfers 20 separate servitudes were created. See Lee v. Giauque, 154 La. 491, 97 So. 669; Arent v. Hunter, 171 La. 1059, 133 So. 157; Cox v. Acme Land & Investment Co., Inc., 192 La. 688, 188 So. 742.
 

 For more than'nine years after the date of the first transfer there was no development for minerals on any of the servitudes,, and in 1937, before the 10 years’ liberative prescription had accrued as to any of the servitudes, án agreement, hereafter designated as the Bourg-Buckley agreement,, was entered into by Bourg on the one part and the Buckleys on the other, the pertinent portions of which are:
 

 “Whereas, Bourg is the owner of, having acquired from (a) Charles W. Buckley, individually; (b) Charles W. Buckley„ Robert W. Buckley and Warren Buckley,. Trustees of the Charles W. Buckley, Trust,, the following described real estate situated in Terrebonne Parish, Louisiana, and described as follows, to-wit:
 

 “1st: In Township Nineteen South,, Range Sixteen East, the following: ■
 

 SE % of SE *4' of Section 26,
 

 E % of Section 35,
 

 E % of SW 14 of Section 36,
 

 SW 14 of SW y4 of Section 35„
 

 All of Section 36.
 

 
 *542
 
 “2nd: In Township Nineteen South, Range Seventeen East, the following: SW
 
 Yi
 
 of Section 77,
 

 S i/2 of NW % of Section 77. .
 

 “3rd: Township Twenty South, Range Sixteen East, the following:
 

 All of Section 1,
 

 All of Section 2,
 

 SE }4 of Section 3,
 

 SE 14 of NE 14 of Section 3,
 

 SE 14 °f SW % °f Section 3,
 

 E
 
 Yz
 
 of the SE % of Section 9,
 

 N
 
 Yz
 
 of Section 10,
 

 All of Section 11,
 

 All of Section 12,
 

 W % of Section 13,
 

 NE 14 of Section 13,
 

 E % of Section 14,
 

 All of Section 23,
 

 All of Section 26,
 

 WYz
 
 of Section 35.
 

 “4th: In Township Twenty South, Range Seventeen East, the following:
 

 Lot 3 of Section 4,
 

 Lots 5 and 6 of Section 5,
 

 ‘S % of SW 14 of Section 5,
 

 W
 
 Yz
 
 of W y2 of Section 6,
 

 NE % of NW % of Section 6,
 

 .S % °f S
 
 Yz
 
 of Section 7,
 

 .S
 
 Yz
 
 of NW % of Section 7,
 

 NW 14 of SW % of Section 7,
 

 .SE % of NE % of Section 7,
 

 'Undivided % of N % of NE of Sec. 7,
 

 Undivided % of SW 34 of NE 14 of Sec. 7,
 

 Undivided 34 of N % of SE
 
 Yi
 
 of Sec. 7,
 

 Undivided % of NW
 
 Yi
 
 of NW % of Sec. 7,
 

 Undivided y2 of NW
 
 Yi
 
 of NW % of Sec. 8,
 

 Undivided 1/2 of NW y4 of SW 3/4 of Sec. 8,
 

 NE % of Section 8,
 

 E
 
 Y%
 
 of NW 34 of Section 8,
 

 SW 1/4 of NW 1/4 of Section 8,
 

 N y2 of SE 1/4 of Section 8,
 

 E 3/2 of SW 14 of Section 8,
 

 SW y, of SW % of Section 8,
 

 "W y2 of NW 14 of Section 9,
 

 W 1/2 of W y2 of Section 17,
 

 NE 34 of NW
 
 Yi
 
 of Section 17,
 

 All of Section 18,
 

 NW
 
 Yi
 
 of NW 4, of Section 20.
 

 “It is the intention of the parties to include in the above description all properties which Bourg purchased from the Buckleys, including Charles W. Buckley, Individually; and the original deed's from the said Buckleys to Bourg shall be conclusive as to the properties intended to be covered by the above description, and all of the provisions of this contract shall apply to all of the property conveyed by the Buckleys to Bourg whether hereinabove described or not; this contract shall not apply to any property which the Buckleys owned or heretofore owned but which they did not sell to Bourg, and likewise shall not apply to any property which Bourg owns but which Bourg did not purchase from the
 
 *544
 
 Buckleys or from Charles W. Buckley individually, even though some of such property may have been inadvertently included in the above description.
 

 ‘-‘Whereas, all of the oil, gas and minerals lying on, across and under said properties was reserved by-the respective vendor and/or vendors in said sales;, all of which reservations were, made less than ten (10) years ago, and are now the property of the Buckleys through mesne conveyances, the said Bourg having no right, title or interest in and to said minerals, all as will be seen by original sales above referred to and of record in the. Conveyance records of Terrebonne Parish, Louisiana, and .subsequent sales made by C. W. Buckley, wherein said mineral reservations now belong to the Buckleys.
 

 “Whereas, there have been no mineral developments on said property that affect the accrued prescriptive rights of said Bourg in and to said minerals so reserved as aforesaid; and prescription is accruing in favor of Bourg and if no mineral development, viz.: Drilling and/or mining in a bona fide effort to obtain minerals occurs within ten years from the dates of the above respective sales of land to Bourg said mineral reservations will have no legal effect, and all oil, gas and other minerals on and under said properties will become the property of .the fee owner or owners of said properties;
 

 “Whereas, for' a good and valuable consideration hereinafter stated, and' on the terms hereinafter expressed and set ’forth, the said Bourg desires to formally and expressly waive and renounce any and all accrued prescriptive rights, in so far as they affect said mineral reservations to and in favor of the Buckleys, and to sell, convey, transfer, deliver and confirm unto the Buckleys all the oil, gas and other minerals in, on and under said properties . tor-'the end that the, said Buckleys will be vested with all rights to the oil, gas and other minerals lying on, across and under said properties, in full ownership and to "the same extent and legal effect as when said reservations were made in the sales above referred to;
 

 “Now the premises considered, Bourg does by these presents'hereby formally and expressly renounce and waive to and in favor of the Buckleys, their heirs and assigns any and all rights of prescription or prescriptions which may have run or accrued against the aforesaid reservations'of oil, gas and other minerals lying on, across and under the above described properties,, and does grant, sell, convey, transfer, deliver and confirm unto the Buckleys all the oil, gas and other minerals in, on and under the entirety of the above described property as a whole, to the end that the said Buckleys will be and are by these presents vested,, as of this date, with the full ownership of,, in and to all of the oil, gas and other minerals lying in, on and under the .above, described property as a whole, with the same validity and legal effect and duration as
 
 *546
 
 said mineral reservations had at the time the same were originally made in the sales above referred to. The said Bourg, present owner of the lands hereinabove described, does moreover, and in consideration of the premises, confirm in the said Buckleys each and every one of the aforesaid mineral reservations, to be used and enjoyed and exercised by said Buckleys to the same effect and to the same extent and for the duration and with the same legal force as if the said minerals were sold and conveyed to the said Buckleys this day.
 

 “In consideration of this express interruption of prescription, waiver and renunciation, the Buckleys do hereby sell, cede, transfer, convey, abandon and deliver with all legal warranties, and with full substitution and subrogation to all of their rights and actions in warranty against any and all preceding owners and vendors to and unto Bourg, his heirs and assigns, a mineral and royalty interest as set forth, equal to an undivided one-half (%) of all the oil,'-gas and other minerals lying in, on and under the above described properties subject to all mineral leases now affecting said properties, and the right is reserved by the Buckleys to grant extensions of presently existing oil, gas and mineral leases, provided the Buckleys are required or obligated to grant such extensions by the terms of any presently existing oil, gas and mineral leases, and the Buckleys also reserve the right and are granted - full authority to comply with and fully perform any legal and binding ‘options to lease’ now in existence and bearing upon the whole or any part of the aforesaid property; and the Buckleys do furthermore fully reserve the right, and are hereby granted full and exclusive power and authority to execute new oil, gas and mineral leases, and to lease for geophysical exploration or mineral exploration or development the entirety or any part of said properties including Bourg’s royalty interest, for such price and on such terms and conditions as the Buckleys in their discretion may see fit, all without the consent of Bourg, subject, however, to the limitations, restrictions and conditions contained in the following five paragraphs, viz.: * * * ”
 

 The remaining portions of the agree-, ment were concerned with the lease conditions, the division of royalty and bonus rentals, and the nature of the interests of Bourg. The defendant Terrebonne Land Development Corporation has succeeded in title to the Buckleys, and its rights are dependent upon this agreement.
 

 As shown by the document quoted above, it was the intention of the parties to include in the description set out therein all of the lands that had been purchased by Bourg and described in the 10 original deeds of acquisition, under which 20 servitudes were created. It is conceded that after the execution of the Bourg-Buckley agreement oil and gas • wells were drilled on some of the property described therein, and that this mineral development inter
 
 *548
 
 rupted the liberative prescription of 10 years.
 

 It is the position of the áppellant Bourg that the parties to the Bourg-Buckley agreement had no intention of -creating by this agreement one new servitude on the entire tract, but that by this instrument he as owner of the land intended to renounce and waive expressly all accrued liberative prescription which had been running in his favor and against the 20 separate mineral servitudes then owned by the Buckleys, and that in consideration of this renunciation and waiver the Buckleys, owners of the minerals at that time, conveyed to him one-half the minerals. Bourg, taking the position that there are still 20 distinct, separate servitudes, concedes that as to two servitudes prescription has been interrupted where there has been development thereon, and that these servitudes have not been extinguished, but he argues that all others have been lost by liberative prescription for non-use for a period in excess of 10 years.
 

 Appellees argue that the Bourg-Buckley agreement had the effect of creating, and did create,
 
 one mineral servitude
 
 on all of the property described therein because, as conceded, all of the property is continuous and contiguous except one small tract, and the agreement did not provide for the retention of 20 servitudes. Appellees argue further that the Bourg-Buckley agreement clearly evinces the intent on the part of both the landowner Bourg and the mineral owners, the Buckleys, to create
 
 one mineral servitude,
 
 and that, since only, one mineral servitude has been created, the drilling and production on the land described in the agreement within 10 years from its execution interrupted the liberative prescription so that the ownership of one-half the minerals in the entire tract is still vested in appellee Terrebonne Land Development Corporation.
 

 We cannot agree that the fact that the property described in the agreement was one continuous tract had the effect of creating one servitude where there had been 20. At the time the Bourg-Buckley agreement was entered into, Bourg, the landowner, did not own any of the minerals on the property described in the agreement since all of the minerals had been reserved by the vendors in his deeds of acquisition. This fact was recognized by the parties to. the agreement itself as disclosed by the second “Whereas” clause.
 

 Under the law and jurisprudence of this state, it is well settled that the right to impose a servitude on land belongs to the owner of the land, and that, where the owner of the land does not own any of the minerals, it is impossible for him to create a servitude; or, in other words, that a mineral servitude can be created only by a landowner who owns the minerals. Gulf Refining Co. v. Orr, 207 La. 915, 22 So.2d 269; Long-Bell Petroleum Co., Inc., v. Tritico, 216 La. 426, 43 So.2d 782.
 

 Under these well-established principles of law, although it is true that the
 
 *550
 
 property as described in the Bourg-Buckley agreement is the same property in which the Buckleys reserved the minerals in their sales to Bourg, the fact that the property described in this agreement is one continuous and contiguous tract would not, of itself, under the facts of this case create and establish one mineral servitude covering the entire tract as described therein. Nowhere in the instrument is there the clearly expressed intention on the part of the servitude owners necessary under Article 817 of the Civil Code and Long-Bell Petroleum Co., Inc., v. Tritico, supra, for the renunciation of. the servitudes which were in existence. We cannot agree that the manner of description of the property would have the
 
 legal effect
 
 of extinguishing the 20 servitudes so that the landowner could then create one new servitude.
 

 We next consider appellees’ argument that the Bourg-Buckley agreement clearly shows that it was the intention of the parties, the landowner and the mineral owners, to create thereby one mineral servitude. They rely on the well-established principles of law that the rights of parties to a contract are to be governed by the intention of the parties thereto, subject only to the law that controls the subject matter of the contract, and that the intention must be gathered from the words as used in the contract and the manner in which it was executed, citing Civil Code, Article 1945 et seq.; Shell Petroleum Corporation v. Calcasieu Real Estate & Oil Co., 185 La. 751, 170 So. 785; Robinson v. Horton, 197 La. 919, 2 So.2d 647.
 

 Appellees argue that the act of the parties in describing the property in the agreement without regard to the separate servitudes indicates an unmistakable intention by both parties to create one servitude, an intention sufficiently strong to renounce and extinguish the existing 20 servitudes and create but one. Further to show that such was the intention of the parties, appellees rely principally on the clause commencing “Now the premises considered”.
 

 Appellees state that an analysis of this clause discloses that the landowner declared that he waived and renounced all rights of prescription accrued against the mineral reservations as to the
 
 “above described property as a whole”;
 
 that an examination of the
 
 “above described properties”
 
 shows that the property is described in such a way that the former separate purchases (which according to appellant established 20 servitudes) were entirely ignored, and as described formed but one continuous, and contiguous tract except for the small non-contiguous tract. Continuing their analysis, they say that the landowner sold and transferred to the then mineral owners without objection from the mineral owners (who were the only ones who could have objected) as an
 
 “entirety”
 
 under the
 
 “above described property as a whole” all
 
 of the minerals thereunder, to the end that the Buckleys would be vested as of that date
 
 *552
 
 with the full ownership of
 
 “all”
 
 the oil, gas, and other minerals in the
 
 “above described property as a
 
 whole” with the same validity and legal effect and duration as the mineral reservations had at the time they were originally made in the sales; that he waived and renounced accrued prescription
 
 as to the whole
 
 and confirmed the servitude by a transfer
 
 of the whole.
 

 Their argument, in sum, is that the words “entirety”, “under the above described property”, “all ”, and “as a whole” clearly show the intention to create but one servitude on the property made the subject of the agreement, particularly when it is considered that it was said in the first “Whereas” clause that “It is the intention of the parties” that “all of the provisions of this contract shall apply to all of the property” made the subject of the agreement.
 

 Considering all the expressions emphasized and the contract in its entirety, we do not think that the parties thereto indicated an intention to create and establish one servitude. There can be no dispute that Bourg actually had no mineral rights to convey to the Buckleys, and to us the intention of the parties, and the entire purpose of the agreement, was to prevent the Buckleys from losing their mineral rights by liberative prescription of 10 years which was about to accrue on some of the servitudes. In consideration for the landowner’s waiving and renouncing the accrued. prescription the Buckleys conveyed to him one-half the minerals under
 
 all
 
 the property.
 

 The trial judge in his reasons for judgment said:
 

 “We must agree that Bourg owned no minerals and could convey none, and that there is nothing in the Buckley-Bourg Agreement evidencing an intention on the part of the Buckleys to renounce their mineral ownership. On the contrary, it must be conceded that the instrument discloses a desire to retain rather than to renounce. * * *»
 

 The judge found, however, that the agreement disclosed with certainty that it was the intent of the parties to deal with the minerals in the property as a whole, and he concluded that the parties did not intend to create by this agreement a “mineral estate”, but intended simply to
 
 revise
 
 an existing “mineral estate”. The effect of such a holding was to create under the Bourg-Buckley agreement one servitude, but this, as we have heretofore pointed out, was not in accord with the intention of the parties themselves. Further, although the parties may have dealt with the property as a whole, there is no provision whatsoever in the agreement that the exercise of the right under any one of the particular servitudes would be considered by the landowner and the mineral owners as the exercise of the right under any or all of the servitudes.
 

 We are of the opinion therefore that the district court erred in overruling the plea
 
 *554
 
 of liberative prescription filed by plaintiff Bourg as to all of the property described in the agreement which was contiguous, and that this plea should have been sustained as to all the property except those tracts on which there had been mineral development to interrupt prescription.
 

 The trial judge stated that no argument was offered by the defendants in support of the validity of the mineral lease granted by Terrebonne Land Development Corporation to J. J. Hebert under date of April 19, 1948, insofar as the one-half mineral interest of Harry Bourg was concerned, and he found that the Terrebonne Land Development Corporation was without right or authority in acting for and in the name of Bourg in executing this mineral lease, and that the lease was null, void, and of no effect insofar as it related to the mineral interest of Bourg. We do not understand that the defendants consider their contention valid if we reverse the judgment, because under a reversal the Terrebonne Land Development Corporation will have no mineral rights whatever in the tract leased. In any event, however, that judgment is correct and should be affirmed, for it is well settled that an agent has no power to substitute another to perform duties of his mandate unless expressly or impliedly authorized to do so by the principal. Civil Code, Article 3007; Shreveport Engraving Co. v. United States, 5 Cir., 143 F.2d 222, certiorari denied, 323 U.S. 749, 65 S.Ct. 82, 89 L.Ed. 600, rehearing denied 323 U.S. 815, 65 S.Ct. 128, 89 L.Ed. 648; Smith v. Howard Crumley & Co., Inc., La.App., 171 So. 188. We find no express power of substitution in the BourgBuckley agreement, in which Bourg appointed the Buckleys as his agent for the leasing of the property, and none can be implied from it.
 

 For the reasons assigned, it is now ordered that the judgment of the lower court insofar as it overruled plaintiff Harry Bourg’s plea of liberative prescription of 10 years to all of the property described in the Bourg-Buckley agreement be reversed and set aside, and it is now ordered that this plea be maintained except as to the following described property: (1) N % of SW y4, SE 1/4 of NW 1/4. and SW y4 of SW
 
 y4,
 
 all in Section 77, Township 19 South, Range 17 East; and (2) Section 1, Township 20 South, Range 16 East, and W y2 of W % and NE % of NW % of Section 6, Township 20 South, Range 17 East. As to the above described property, plaintiff Harry Bourg and the defendant Terrebonne Land Development Corporation are each recognized as the owner of one-half the minerals therein. In all other respects the judgment is affirmed. Appellees are to pay all costs of this appeal.