402 So.2d 704 (1981)
Earl E. WALL
v.
Clinton Joseph LEGER, Jr. et al.
No. 14022.
Court of Appeal of Louisiana, First Circuit.
April 13, 1981.
*705 Walter Naquin, Jr., Thibodaux, for plaintiff-appellee Earl E. Wall.
Charles J. LeBlanc, Thibodaux, for defendant-appellee Clinton Joseph Leger, Jr.
Harold B. Carter and S. Frazer Rankin, New Orleans, for defendants-appellants Jeanne Gaudet Naquin, Gabriel Gaudet, Nell Gaudet Zeringue, Ernest John Gaudet, Norbert Gaudet, Robert Gaudet, Marie Gaudet Beaulieu, Richard Gaudet, Katherine Gaudet Picou, Michael Louis Gaudet and Myron Anthony Gaudet.
Before COVINGTON, CHIASSON and LEAR, JJ.
COVINGTON, Judge.
This is a concursus proceeding involving mineral rights affecting a certain tract of land, one-half arpent by forty arpents, situated in Lafourche Parish, Louisiana, on the right descending bank of Bayou Lafourche, a few miles below the City of Thibodaux, referred to as the "Leger tract." The plaintiff, Earl E. Wall, as the assignee of the lessee of certain mineral leases, asserted that the Leger tract was partly in a voluntary unit known as "The Thibodaux No. 1" well[1]; that as a result of production, certain *706 present and future royalty payments are due or will become due to the owner of certain mineral rights, but that the plaintiff in concursus was unable to ascertain the owner thereof because of contradictory claims thereto; and that, therefore, he desired to deposit the proceeds due on production from the well, allocable to the Leger tract (which property contributed 5.5861 acres to the voluntary unit, out of a total area of 160 acres, and is allocated 3.4913% of unit production),[2] and to have all claimants thereto to make their claims. Claude Gaudet, Jeanne Gaudet Naquin, Gabriel Gaudet, Nell Gaudet Zeringue, Ernest John Gaudet, Norbert Gaudet, Robert Gaudet, Marie Gaudet Beaulieu, Richard Gaudet, Katherine Gaudet Picou, Michael Louis Gaudet and Myron Anthony Gaudet, the heirs of Leonise Thibodaux Gaudet (one of the ten children of Prosper and Mathilde Toups Thibodaux), referred to as the "Gaudet heirs," asserted a claim to the deposited money and the mineral rights involved, based on a partition agreement of June 12, 1941, in which they received the Leger tract as their portion of the parent tract (with the mineral rights reserved to all heirs of Prosper Thibodaux and his widow), and their reservation of mineral rights in their sale of the Leger tract on July 19, 1968, to Clinton J. Leger, Jr. The adverse claimant was the vendee, Leger, who based his claim on the mineral rights having reverted to him as the owner of the Leger tract in December of 1974 because there was an outstanding mineral servitude on the Leger tract when the Gaudet heirs attempted to reserve the mineral rights in their sale to Leger, and which had prescribed on December 14, 1974.
The case was tried to the judge on a Stipulation of Facts and Addendum to Stipulation of Facts (which are attached to this opinion as an Appendix, but without the Exhibits referred to therein). The trial judge found that the certain mineral leases to E.H. Stickney, dated January 31 and March 18, 1939, did not prevent the Thibodaux heirs from creating a mineral servitude, which he held that they did in their partition of June 12, 1941. The court also held that it was the intention of the parties to the partition that the land be divided into separate tracts, but that it was their intention to create a single mineral servitude on the parent tract in that "all of the heirs would participate in any of the production from any portions of this tract." The court further found that this servitude on the parent tract was maintained by production through December 14, 1964; hence, the ten-year liberative prescription extinguished the mineral servitude on the parent tract, including the Leger tract, on December 14, 1974. The trial judge concluded that the deed from the Gaudet heirs to Leger did not create a new mineral servitude in favor of the Gaudets, but was a sale subject to an existing servitude on the parent tract; that when the servitude on the parent tract was extinguished because of liberative prescription of nonuse in 1974, the mineral rights to the Leger tract reverted to Leger, the then landowner. The lower court then rendered and signed a judgment recognizing Leger as the owner of the mineral rights in the Leger tract and entitled to the money deposited and to future royalty payments. The Gaudet heirs have appealed. We affirm.
On appeal the defendants, the Gaudet heirs, specify the following errors:
1. The trial court erred in concluding that the 1939 mineral lease (Stickney), coupled with production prior to the partition, did not preclude the creating of a mineral servitude in the 1941 partition.
2. The trial court erred in concluding that the partition created a single mineral servitude rather than seven separate mineral servitudes so that *707 the Grubb & Hawkins-Thibodaux Heirs No. 1 well was an "off-premises" well.
3. The trial court erred in concluding that the Gaudet heirs did not own at least a one-eighth mineral interest.
It is the royalty payments allocated to the Leger tract and the mineral rights in said tract that are the subject of the present controversy, which came about because of the act of sale conveying the Leger tract from the Gaudet heirs to Leger, dated July 19,1968, which contained this provision following the description of the land:
"LESS AND EXCEPT:
"All of the oil, gas and minerals, in, on and/or under the above described property. It is understood, however, that the exercise of the mineral rights herein reserved shall be by directional drilling; that this mineral reservation does not include the right to use the surface of the property."
The Leger tract had been acquired by the Gaudet heirs in the partition agreement between the widow and heirs of Prosper Thibodaux, dated June 12, 1941. In the partition agreement, the surface of the parent tract was divided into seven ½ by 40 arpent tracts, the surface of six of the tracts being transferred to six of the children of Prosper Thibodaux and the surface of the seventh tract being transferred to the Gaudet heirs. The following language is contained in the partition agreement:
"It is clearly understood and agreed between the parties hereto that the ownership in the oil, gas and minerals, and oil, gas and mineral rights, are not in any way changed or effected (sic) by this partition, and the co-parceners hereto, hereby declare and acknowledge that the oil, gas and mineral and oil, gas and mineral rights in each and every tract of land hereinabove allocated to each of him, her or them, is owned by the parties hereinafter named, in the proportion set out after each name, to-wit:" (names and proportions are given in a footnote)[3]
Further language from the Partition follows:
"And whereas the parties hereto, except Mathilde Toups Thibodaux, severally declare that they each acquired their interest in said property by inheritance from the late Prosper Thibodaux, as will be seen by Judgment of Possession signed August 23, 1940 by the Honorable Robert B. Butler, Judge of the 17th Judicial District Court in and for the Parish of Lafourche, Louisiana, in the matter entitled `Succession of Prosper Thibodaux No. 3777 Probate'.
"And whereas Mathilde Toups Thibodaux acquired 10/20th interest, and the usufruct of the other 10/20th interest in said property as widow in community from her late husband, Prosper Thibodaux, as set out in the Judgment hereinabove referred to; and acquired an additional 3/20th undivided interest in and to the surface rights, on said property, by purchase from May Thibodaux Champagne, Cecile Thibodaux, Leonce Thibodaux and Clifton Thibodaux, as will be seen by referring to acts of sale executed before D.D. Toups, Notary Public, under date of April 15, 1941, and April 29, 1941, and recorded in the conveyance records of the Parish of Lafourche, Louisiana.
"And whereas May Thibodaux Champagne, Cecile Thibodaux, Leonce Thibodaux and Clifton Thibodaux acquired *708 their interest in and to the oil, gas and minerals, and oil, gas and mineral rights, in, under, to and on said property by reserving said rights in the sales made by them to Mathilde Toups Thibodaux, in the disposition of their undivided interest in said property acquired by them by inheritance from the late Prosper Thibodaux as set out in the Judgment of Possession hereinabove referred to.
"And whereas the parties hereto severally declare that they no longer wish to remain in indivision of the surface rights of said property, and desire to amicably partition said property in kind between them.
"NOW THEREFORE, said appearers for themselves, etc...."
The following language relating to the Gaudet heirs and their acquisition is set out in the Partition:
"There shall be allotted and there is by these presents allotted and delivered, transferred, and sold by the other co-owners, to and unto Jeanne Gaudet, wife of Edward Naquin; Claude Gaudet; Roy Gaudet; Gabriel Gaudet; Nell Gaudet, wife of full age of Charles Zeringue; John Gaudet; and the minors, Norbert Gaudet, Robert Gaudet; Marian Gaudet, Richard Gaudet and Katherine Gaudet the following tract, to-wit:
"`A certain tract of land situated in the Parish of Lafourche, State of Louisiana, about six miles below the Town of Thibodaux, on the right descending bank of Bayou Lafourche, having a front on said bayou of one-half arpent, more or less, by a depth of forty arpents, bounded above by property this day allotted to Julia Thibodaux Leger, below by property of Pierre Hernandez. Together with all the buildings and improvements thereon and thereto belonging.'
"The said above described property to remain the property of said Jeanne Gaudet Naquin, Claude Gaudet, Roy Gaudet, Gabriel Gaudet, Nell Gaudet Zeringue, John Gaudet, and the minors Norbert Gaudet, Robert Gaudet, Marian Gaudet, Richard Gaudet, and Katherine Gaudet and their heirs and assigns forever, with full possession thereof, subject however, to full recognition of the present ownership of the oil, gas and minerals and oil, gas and mineral rights in, under, to and on said property, specially reserved herein, and subject to the usufruct which Mrs. Mathilde Toups Thibodaux reserves on said property."
After the partition agreement, Mathilde Toups Thibodaux died on September 10, 1943.[4] Her husband, Prosper Thibodaux had died in 1907, but his succession was not opened until 1940. In that succession, the widow and their ten children were recognized as surviving spouse and heirs respectively, with the widow also having the usufruct over the community property, which included the parent tract.[5]
Prior to the opening of the succession of Prosper Thibodaux, his widow and heirs had executed mineral leases to which we allude in paragraph two, above. On July 11, 1940, production was obtained from a well[6] located on the parent tract which had been drilled under the Stickney leases. There was production sufficient to maintain the original mineral leases and the mineral servitude created by the partition during the period of July 11, 1940 through December *709 14, 1964 (after which time the well was plugged and abandoned).
The appellants first contend that they reserved a mineral servitude in their 1968 sale to Leger. It is their contention that at that time there was no servitude on that tract. As the appellants view it, they did not and could not have created an earlier mineral servitude (or other mineral interest) on the parent tract in the partition agreement since there were already outstanding mineral leases (Stickney) on the parent tract, and production had been obtained. It is their argument that the partition agreement did not create a mineral servitude, so they were free to create a mineral servitude by reserving mineral rights in the deed to Leger.
On this question the appellants argue that LSA-R.S. 31:24 is dispositive of the issue of whether a landowner is permitted to create a mineral servitude, having previously leased his mineral rights and production having been established under that lease. Article 24 of the Mineral Code does not address this situation.
Article 24 is a limitation on mineral servitudes, not on mineral leases. The language of article 24 is clear that only the landowner who owns the right to explore for and produce minerals when the servitude is created can create a mineral servitude. See Bourg v. Hebert, 224 La. 535, 70 So.2d 116 (1953). We hold that article 24 is applicable only to the mineral servitude, not the mineral lease. A mineral lessor does not transfer ownership of mineral rights when he enters into a lease; he grants to the mineral lessee the right to explore for and produce minerals; it is "operating rights and the right to share in production" that are transferred to the lessee, not ownership of mineral rights.[7] Ownership of mineral rights remains with the mineral lessor; hence, article 24 would not prohibit the granting of a mineral lease even if it were applicable to mineral leases. Moreover, a mineral lease under which production is established is not thereby converted into a mineral servitude, so as to divest the lessor of title to mineral rights. The effect of production, if it is "in paying quantities", is to maintain the lease and keep it from expiring; not to change the lease into a servitude. LSA-R.S. 31:124.
There is a functional similarity between the lease and the servitude in that the mineral lessee obtains a right to a share of production and to operating rights much the same as the owner of a mineral servitude. See Comment under LSA-R.S. 31:116. Both are "mineral rights", and as such, are "real rights" and "incorporeal immovables." LSA-R.S. 31:16, 18. By way of functional comparison, the mineral lease, like the mineral servitude, grants rights to explore and produce minerals and to reduce them to possession. LSA-R.S. 31:15, 16, 21, 114.
However, they are conceptually different; the distinction between a mineral servitude and a mineral lease is pronounced. McCollam, A Primer for the Practice of Mineral Law under the New Louisiana Mineral Code, 50 Tul.L.Rev. 732, 785 (1976). By definition, "a mineral servitude is the right of enjoyment of land belonging to another for the purpose of exploring for and producing minerals and reducing them to possession and ownership." LSA-R.S. 31:21. "A mineral lease is a contract by which the lessee is granted the right to explore for and produce minerals." LSA-R.S. 31:114.
The mineral servitude is subject to the prescription of nonuse for ten years. LSA-R.S. 31:27. The mineral lease, although not subject to the prescription of nonuse, can not be continued for longer than ten years without drilling, mining operations, or production. LSA-R.S. 31:115; Reagan v. Murphy, 235 La. 529, 105 So.2d 210 (1958). The grantor of a mineral servitude ceases to be the owner of the mineral rights; the lessor of a mineral lease continues to be the owner of the mineral rights. See McCoy v. United Gas Public Service Company, 57 F.Supp. *710 444 (E.D.La.1944). A mineral lease, unlike a mineral servitude, is not subject to the contiguity rule established with respect to servitudes in Lee v. Giauque, 154 La. 491, 97 So. 669 (1923), LSA-R.S. 31:114; Reagan v. Murphy, supra.
In general, a mineral servitude may be created only by a landowner who owns the right to explore for and produce minerals when the servitude is created. LSA-R.S. 31:24; Bourg v. Hebert, supra; Long-Bell Petroleum Co. v. Tritico, 216 La. 426, 43 So.2d 782 (1949). A mineral lease may be granted by the landowner who owns mineral rights, the mineral servitude owner, and the holder of executive rights over the mineral rights which he does not own; in other words, any person having an "executive interest" in the mineral rights on the particular property may grant a mineral lease. LSA-R.S. 31:116.
A reversionary mineral interest can be leased. LSA-R.S. 31:144; Wahlder v. Roy O. Martin Lumber Co., Inc., 337 So.2d 669 (La.App. 3 Cir. 1976). On the other hand, the "expectancy of a landowner in the extinction of an outstanding mineral servitude cannot be conveyed or reserved directly or indirectly." LSA-R.S. 31:76; Hicks v. Clark, 225 La. 133, 72 So.2d 322 (1954).
We find that a mineral servitude was created by the parties to the partition, including the Gaudet heirs. The outstanding mineral leases to E.H. Stickney were no obstacle or hindrance to the creation of the mineral servitude.
In considering the 1968 deed, the trial court held that "the deed from the Gaudet heirs to Clinton Leger, Jr. dated July 19, 1968 did not create a new servitude in favor of the Gaudets, but merely sold to Leger subject to an existing servitude affecting the entire parent tract."
A mineral servitude may be created only by a landowner who owns the right to explore for and produce minerals when the servitude is created. LSA-R.S. 31:24; Bourg v. Hebert, supra. In order for one making a reservation of a mineral right to create a new servitude, he must be the owner of the right at the time the reservation is made. McMurrey v. Gray, 216 La. 904, 45 So.2d 73 (1949); Long-Bell Petroleum Co. v. Tritico, supra. A landowner who has a mineral servitude outstanding against his estate can not sell the land and reserve reversionary rights. Hicks v. Clark, supra; noted, 15 La.L.Rev. 231 (1954). The reservation by the grantor of a right to extend his reversionary rights beyond the prescriptive period of ten years is ineffective as against public policy. Ober v. McGinty, 66 So.2d 385 (La.App. 2 Cir. 1953).
We find that a landowner whose land is burdened with a mineral servitude can not create a new mineral servitude on the land by a reservation of mineral rights in an act of sale conveying the land. LSA-R.S. 31:24. Consequently, when the Gaudet heirs sold to Leger on July 19, 1968, the mineral rights on the Leger tract were covered by the mineral servitude created in the Act of Partition, and they could not be reserved by the Gaudet heirs in the Act of Sale.
Next, it is the appellants' contention that the partition agreement of 1941 created seven separate servitudes, not a single servitude on the parent tract.
Pursuant to LSA-R.S. 31:66 the owners of several contiguous tracts of land may establish a single mineral servitude in favor of one or more of them or of a third party. Moreover, co-owners of land constituting a continuous whole may partition it and reserve a single mineral servitude in favor of one or more of them. LSA-R.S. 31:67; GMB Gas Corporation v. Cox, 340 So.2d 638 (La.App. 2 Cir. 1976); see also Mire v. Chevron Oil Company, 353 So.2d 462 (La.App. 3 Cir. 1977), writ denied, 355 So.2d 256 (La. 1978).
In Whitehall Oil Company v. Heard, 197 So.2d 672 (La.App. 3 Cir. 1967), writ denied, 250 La. 924, 199 So.2d 923 (1967), which dealt with mineral reservations contained in a partition in kind of a tract of land into contiguous tracts, the Court held that determination of whether the parties intended to *711 create a single servitude or multiple servitudes depended upon construction of the particular conveyances, using the principles of contractual construction. Thus, the issue is to be determined according to the intent of the parties as reflected by the particular conveyances.
In our opinion, the instrument itself, the Act of Partition, in the case at bar reflects an intent on the part of the parties to the partition to create a single servitude. First of all, there was the same reservation made in each allotment contained in a single instrument dealing with a continuous tract of land. This is strong evidence of an intent to create a single servitude. LSA-R.S. 31:63, 66, 67, 68. Further, the subsequent actions of the parties to the partition, particularly the Gaudet heirs, reveal that they themselves considered it to be, and dealt with it, as a single servitude. In several mineral leases the Gaudet heirs acknowledged that they owned only one-eighth of the minerals (eleven heirs with 1/88 each) in the parent tract (including its component part at the time, the Leger tract): Oil, gas and mineral lease dated April 20, 1970 to David J. Robichaux; oil, gas and mineral lease dated July 10, 1973 to T.W. Kleinpeter; and another oil, gas and mineral lease dated July 10, 1973 to T.W. Kleinpeter.
What is more convincing, however, is the language used in the Act of Partition itself. The allotted surfaces are conveyed to particular heirs "subject however, to full recognition of the present ownership of the oil, gas and mineral rights in, under, to and in said property, specially reserved herein." And further, after all of the allotments are made, the following language is used:
"It is clearly understood and agreed between the parties hereto that the ownership in the oil, gas and minerals, and oil, gas and mineral rights, are not in any way changed or effected (sic) by this partition, and the coparceners hereto, hereby declare and acknowledge that the oil, gas and mineral, and oil, gas and mineral rights in each and every tract of land hereinabove allocated to each of him, her or them, is owned by the parties hereinafter named, in the proportion set out after each name, to-wit:" (names and proportions omitted)
In view of our finding that the 1941 partition agreement created a single servitude, the Grubb & Hawkins-Thibodaux Heirs No. 1 well is an "on-premises" well so that the inclusion or exclusion from the 25-acre unit is of no consequence, and LSA-R.S. 31:37 is inapplicable to the case at bar. The unit well is on land burdened by the mineral servitude. Liberative prescription extinguished the servitude on December 14, 1974 (ten years after production ceased), not on August 26, 1967 (ten years after the partial release from Stickney to the Thibodaux heirs), as the appellants contend.
There is no merit in the appellants' final argument that they at least own an undivided one-eighth interest. Whatever mineral interest the Gaudet heirs had in the parent tract, including the Leger track, prescribed for ten-year nonuse, on December 14, 1974.
For the foregoing reasons, the judgment appealed is affirmed. It is ordered, adjudged and decreed that Clinton J. Leger, Jr. as the owner of the following described property:
"A certain tract of land situated in the Parish of Lafourche, State of Louisiana, about Six (6) miles below the Town of Thibodaux, on the right descending bank of Bayou Lafourche, having a front on said bayou of one-half arpent, more or less, by a depth of forty arpents, bounded above by property of Mrs. Julia Thibodaux Leger, below by property of Pierre Hernandez, now or formerly, together with all the buildings and improvements thereon and all rights, ways, servitudes and privileges thereto belonging or in anywise appertaining.
"Being the same property acquired by vendors (and/or their ancestors) by virtue of a partition and exchange agreement dated June 12, 1941 and recorded under Entry No. 55294, C.O.B. 100, Page 256 of the conveyance records of Lafourche Parish, Louisiana."
is the owner of the mineral rights in and thereunder.
*712
The appellants are to pay all costs of this AFFIRMED.
appeal.
 APPENDIX A-1
 17TH JUDICIAL DISTRICT COURT
 LAFOURCHE PARISH
NO. 38765 STATE OF LOUISIANA
 EARL E. WALL
 versus
 CLINTON JOSEPH LEGER, JR., ET AL
Filed: _______________________________ __________________________
 DEPUTY CLERK

STIPULATION OF FACTS
NOW INTO COURT, through their undersigned counsel, come Clinton J. Leger, Jr., and Claude Gaudet, Jeanne Gaudet Naquin, Gabriel Gaudet, Nell Gaudet Zeringue, Ernest John Gaudet, Norbert Gaudet, Robert Gaudet, Marie Gaudet Beaulieu, Richard Gaudet, Katherine Gaudet Picou, Michael Louis Gaudet, Myron Anthony Gaudet, and through their undersigned counsel respectfully submit this Stipulation of Facts:

I.
On January 31, and March 18, 1939, by leases recorded in COB 89, Folio 153, and COB 89, Folio 539, (copies of which are annexed hereto as Exhibits "A" and "B"), the heirs of Prosper Thibodaux leased a certain 3½ arpent by 40 arpent tract, which tract was bounded above by Moise J. Thibodaux and below by Pierre Hernandez, to E. H. Stickney. This 3½ arpent by 40 arpent tract shall be referred to hereinafter as the "parent tract".

II.
The ½ arpent by 40 arpent tract which is the subject of this proceeding, also called the "Leger" Tract, is the southernmost ½ arpent of the "parent tract".

III.
Prosper Thibodaux was married but once and then to Mathilde Toups Thibodaux and he died on November 5,1907. A Judgment of Possession was rendered in "Succession of Prosper Thibodaux, Probate No. 3777, Parish of Lafourche, 17th Judicial District Court, State of Louisiana", on August 23, 1940, a copy of which Judgment of Possession is recorded in COB 98, Folio 466, Entry No. 53245 and is annexed hereto as Exhibit "C". In the Judgment of Possession, Mathilde Toups Thibodaux was recognized as the surviving widow and as the owner of one-half ½ of the community property and as the usufructuary of the remaining one-half ½ The community property included the "parent tract" involved in this proceeding. The succession proceedings indicate that ten (10) children were born of the marriage between Prosper Thibodaux and Mathilde Toups, eight (8) of whom were living at the time of the succession and two (2) of whom had died between the death of the decedent and the opening of his succession, namely, (1) Leonise Thibodaux, wife of Gaston Gaudet, and (2) Moise Thibodaux. Leonise Thibodaux left her one-twentieth (1/20) interest in the community property "parent tract" to her eleven (11) children and their descendants, herein referred to as "the Gaudet heirs". Moise Thibodaux, the other deceased son of Prosper Thibodaux, was married but once and then to Leonise Breaux, and only two (2) children were born of that marriage, Leonce Thibodaux and Clifton Thibodaux. The latter two inherited the one-twentieth (1/20) interest in the community property "parent tract" formerly belonging to their father, Moise Thibodaux.
*713 APPENDIX A-1Continued 
IV.
After the Judgment of Possession was rendered on August 23, 1940, the widow and heirs of Prosper Thibodaux entered into a series of transactions. On April 15, 1941, May Thibodaux Champagne, one of the ten (10) children, and Leonce Thibodaux and Clifton Thibodaux, heirs of another child, sold their undivided interests in the three and one-half (3½) arpent by forty (40) arpent tract, the "parent tract", to the widow of Prosper Thibodaux, Mathilde Toups Thibodaux. The Act of Sale is recorded in COB 100, Folio 254, Entry No. 55292 of the Conveyance Records of Lafourche Parish, Louisiana and is annexed hereto as Exhibit "D". On April 29, 1941, Cecile Thibodaux, Interdict, sold to Mathilde Toups Thibodaux, her one-twentieth (1/20) interest in the "parent tract", by sale recorded in COB 100, Folio 255, Entry No. 55293, a copy of which is annexed hereto as Exhibit "E".

V.
On June 12,1941, an Act of Partition was executed by the widow and heirs of Prosper Thibodaux by Act recorded in COB 100, Folio 255, Entry No. 55294, a copy of which act is annexed hereto as Exhibit "F".

VI.
After the aforesaid Partition Agreement was executed, Mathilde Toups Thibodaux, widow of Prosper Thibodaux, died on September 10, 1943. She was survived by the same heirs listed in the Succession of her late husband. No succession proceedings has been opened on Mrs. Mathilde Toups Thibodaux to date.

VII.
Cecile Thibodaux, another child of Prosper Thibodaux, died on July 2, 1944, without ever having been married and without having any children. Her succession was opened as Probate No. 4109, 17th Judicial District Court, and was recorded under Entry No. 64672 and a Supplemental Judgment of Possession recorded under Entry No. 64735, and together are annexed hereto as Exhibit "G". May Thibodaux Champagne, also a child of Mathilde and Prosper Thibodaux, who had been married but once and then to Adam Champagne, died on June 22, 1955. Her succession was opened under Probate No. 3340 of the 17th Judicial District Court, Terrebonne Parish, Louisiana. She had no children, and thus, her interest in the Prosper Thibodaux estate was willed to the remaining heirs of Prosper and Mathilde Thibodaux as can be seen by the Judgment of Possession rendered in Succession of May Thibodaux Champagne, Probate No. 3340, 17th Judicial District Court, Parish of Terrebonne, rendered on June 15, 1956, recorded in COB 209, Folio 164, Entry No. 140722, Lafourche Parish, Louisiana, annexed hereto as Exhibit "H".

VIII.
On July 11,1940, production was obtained from a well (hereinafter referred to as "the well"), which had been drilled pursuant to the E. H. Stickney mineral leases referred hereinabove as Paragraph No. 1. The well location is described under Permit No. 23462 of the Department of Conservation as follows: "The southwest section corner go northeast on Section line 360 feet then a distance of 349.15 feet paralleling southwest line and section 17".

IX.
After initial production was obtained on July 11, 1940, there were recompletions in 1941, 1955, 1956 and 1961. On December 15, 1964, the well was plugged and abandoned as can be seen by Memo dated December 17, 1964 from A. F. Hancock, Jr. to Mrs. Judy Hancock Grubb, a copy of which Memo is annexed hereto as Exhibit "I" and also as can be seen by a copy of a letter from H. L. Hawkins, Jr., et al to Judy Grubb, dated December 22, 1964, a copy of which letter is annexed hereto as Exhibit "J". (Thus, there was production in paying quantities sufficient to maintain the original Stickney Lease and a servitude and/or servitudes, continuously during the period of July 11, 1940 through December 14, 1964.)
*714 APPENDIX A-1Continued 
X.
After initial production was obtained from the well, it produced on a lease basis until January 6, 1944, when a voluntary unit was established on the entire "parent tract", pursuant to a Unit Agreement recorded at COB 110, Folio 304, Entry No. 63568, a copy of which is annexed hereto as Exhibit "K".

XI.
In 1957, the Voluntary Unit which had included the entire parent tract was reduced in size to cover only twenty-five (25) acres of the parent tract. Although it is not certain, without benefit of survey, it is believed that the twenty-five (25) acre unit as reduced included a portion of the one-half (½) arpent (Leger) tract which is the subject of these proceedings as well as other portions of the "parent tract".

XII.
On September 27, 1957, a mineral lease was executed by the various heirs of Prosper Thibodaux, including defendants, Gaudet Heirs, in favor of Edward M. Carter and Allan R. Stern. Said lease was recorded at COB 227, Folio 482, Entry No. 153841 and affected a five and one-half (5½) arpent by forty (40) arpent tract which included the "parent tract" less and except the twenty-five (25) acre Grubb and Hawkins unit. A copy of said lease is annexed hereto as Exhibit "L".

XIII.
On August 17, 1959, a mineral lease was executed by defendants, Gaudet Heirs, and other heirs of Prosper Thibodaux covering the three and one-half (3½) arpent by forty (40) arpent "parent tract" less and except the twenty-five (25) acre Grubb and Hawkins unit. This lease was recorded in COB 257, Folio 158, Entry No. 175068, a copy of which is annexed hereto as Exhibit "M".

XIV.
One of the Gaudet Heirs, Roy L. Gaudet, died on December 14, 1959. His succession was opened in the matter entitled "Succession of Roy Louis Gaudet, Civil District Court, Parish of Orleans, State of Louisiana, Docket No. 376-935, Division A, Docket 1". A copy of the Judgment of Possession was recorded under Entry No. 179097 of the records of Lafourche Parish, Louisiana and a copy of which Judgment is annexed hereto as Exhibit "N".

XV.
On March 25,1965, the defendant, Gaudet Heirs, and other heirs of Prosper Thibodaux executed a mineral lease in favor of David J. Robichaux, which lease is recorded at COB 342, Folio 185, Entry No. 250489. This lease affected the entire parent tract, and there was no exclusion of the twenty-five (25) acre Grubb and Hawkins unit, a copy of which lease is annexed hereto as Exhibit "O".

XVI.
On July 19, 1968, by Act recorded in COB 387, Folio 418, Entry No. 249937 of the Conveyance Records of Lafourche Parish, (a copy of which is annexed hereto as Exhibit "P"), the other named appearers hereto sold to Clinton J. Leger, Jr., the one-half (½) arpent tract (Leger Tract) which is the subject to this proceeding.

XVII.
On April 20, 1970, another mineral lease was executed by the Heirs of Prosper Thibodaux, including the defendant, Gaudet Heirs, which lease was recorded at COB 427, Folio 427, Entry No. 322369 and which lease included the entire parent tract. A copy of said lease is annexed hereto as Exhibit "Q".

XVIII.
On July 10, 1973, the defendant, Gaudet Heirs, as well as other heirs of Prosper Thibodaux, executed a mineral lease recorded at COB 496, Folio 859, Entry No. 373436, which lease was in favor of T. W. Kleinpeter. Said lease affected the entire parent tract, and a copy of same is annexed hereto as Exhibit "R". On July 10, 1973, Ernest John Gaudet, Marie Gaudet, Beaulieu Gaudet, *715 Michael L. Gaudet and Myron Anthony Gaudet, executed a mineral lease recorded at COB 498, Folio 67, Entry No. 374408, in favor of T. W. Kleinpeter, which lease affected the parent tract. A copy of said lease is annexed hereto as Exhibit "S".

XIX.
On March 23, 1977, defendant, Clinton Joseph Leger, Jr., executed a mineral lease in favor of Dave J. Robichaux, which lease was recorded in COB 590, Folio 385, Entry No. 442853, (a copy of which is annexed hereto as Exhibit "T"). Earl E. Wall received that lease by assignment from Dave J. Robichaux by Act recorded at COB 591, Folio 602, Entry No. 443803. A copy of said assignment is annexed hereto as Exhibit "U".

XX.
A Unitization Agreement was recorded by Earl E. Wall on December 16, 1977, at COB 631, Folio 684, Entry No. 461291, which Unitization Agreement affects the one-half (½) arpent tract (Leger Tract) which is the subject of these proceedings, as well as other properties. A copy of said Unitization Agreement is annexed hereto as Exhibit "V".
THUS ENTERED INTO AND SIGNED at Thibodaux, Louisiana, this 15th day of April, 1980, by Charles J. LeBlanc, Attorney for Clinton J. Leger, Jr. and S. Frazer Rankin, Attorney for the above listed Gaudet Heirs.
 /s/ Charles J. LeBlanc
 CHARLES J. LE BLANC
 /s/ Frazer Rankin 
 FRAZER RANKIN
 APPENDIX A-2
 17th JUDICIAL DISTRICT COURT
 STATE OF LOUISIANA
 PARISH OF LAFOURCHE
 NO. 38765
 EARL E. WALL
 versus
 CLINTON JOSEPH LEGER, JR., ET AL
FILED:____________________ _________________________
 DEPUTY CLERK

ADDENDUM TO STIPULATION OF FACTS
NOW INTO COURT, through their undersigned counsel, come Clinton J. Leger, Jr., and Claude Gaudet, Jeanne Gaudet Nacquin, Gabriel Gaudet, Nell Gaudet Zeringue, Ernest John Gaudet, Norbert Gaudet, Robert Guadet, Marie Gaudet Beaulieu, Richard Gaudet, Katherine Gaudet Picou, Michael Louis Gaudet, Myron Anthony Gaudet and through their undersigned counsel respectfully submit this Addendum to the Stipulation of Facts previously filed herein:

VIII. (A)
The well which was drilled pursuant to the E. H. Stickney mineral leases referred to in Paragraph No. I of the Stipulation of Facts was not located upon the one half arpent by forty arpent tract the mineral ownership of which is the subject of the present proceeding and the surface of which presently belongs to Clinton J. Leger, Jr.

XI. (A)
By instruments dated June 10 and 16, 1957 and recorded in COB 222 at Folio 464 *716 and 472, Entry Nos. 150743 and 150756 respectively (see Exhibits "W" and "X" attached) on June 20, 1957, the owners of the Prosper Thibodaux Heirs mineral leases which had been executed on January 31, 1939 (see Exhibits "A" and "B" annexed to the Stipulation of Facts) executed partial reassignments to E. H. Stickney which instruments conveyed, among other interests, all of the assignor's right, title and interest in the Prosper Thibodaux Heirs mineral leases less and except a 25 acre tract of land surrounding the then existing Grubb and Hawkins-Thibodaux Heirs No. 1 Well. That 25 acre tract is more fully designated on a plat of survey by Carl E. Heck, surveyor, a copy of which is attached to the Reassignment bearing Entry No. 150756 a copy of which is attached hereto as Exhibit "X".

XI. (B)
On August 26, 1957, Mr. Stickney executed a partial release of the 1939 Thibodaux Heirs leases, among others, which partial release was recorded on August 27, 1957 in COB 226 Folio 107 under Entry No. 152749 of the conveyance records of Lafourche Parish (see Exhibit "Y" attached). This instrument released all property not included within the 25 acre tract of land surrounding the Grubb and Hawkins-Thibodaux Heirs Unit No. 1 Well.
THUS ENTERED INTO AND SIGNED at Thibodaux, Louisiana this 9th day of June, 1980, by Charles J. LeBlanc, Attorney for Clinton J. Leger, Jr. and S. Frazer Rankin, Attorney for the above listed Gaudet Heirs.
 /s/ Charles J. LeBlanc
 CHARLES J. LE BLANC
 /s/ S. Frazer Rankin
 S. FRAZER RANKIN
NOTES
[1] The Thibodaux No. 1 well (also known as the Dew Oil & Gas Co., Inc., Joseph Thibodaux, et al. No. 1 well) was drilled on the Prosper Thibodaux tract of land, measuring three and one-half by forty arpents, referred to as the "parent tract." The well, while on the parent tract, is not located on the Leger tract. The well was drilled and production obtained from it in 1977.
[2] Leger, in his answer to the concursus petition, alleged that "the actual acreage contained is 5.887 acres out of the total unit of 160 acres and that said tract is allocated 3.429% of unit production."
[3] Toups Thibodaux 10/20
Angelique Thibodaux Breaux 1/20
Louise Thibodaux Donnaud 1/20
Julia Thibodaux Leger 1/20
Harie Thibodaux Marcello 1/20
Archangel Thibodaux Marcello 1/20
Joseph Thibodaux 1/20
Cecile Thibodaux 1/20
May Thibodaux Champagne 1/20
Clifton Thibodaux 1/40
Leonce Thibodaux 1/40
Jeanne Gaudet Naquin 1/220
Claude Gaudet 1/220
Roy Gaudet 1/220
Gabriel Gaudet 1/220
Nell Gaudet Zeringue 1/220
John Gaudet 1/220
Norbert Gaudet 1/220
Robert Gaudet 1/220
Marian Gaudet 1/220
Richard Gaudet 1/220
Katherine Gaudet 1/220

[4] No succession proceedings were opened for Mathilde Toups Thibodaux; however, it appears that her heirs are basically the same as those of her husband, Prosper Thibodaux (except for heirs of their deceased children taking the place of their "Thibodaux" parents).
[5] The mother of the Gaudet heirs, Leonise Thibodaux, wife of Gaston Gaudet, had died between the time of Prosper's death and opening of his succession, so her interest went to her eleven children (or their descendants). Another child, Moise Thibodaux, had also died in the meantime, but his children later sold to the widow. About the same time two other Thibodaux children sold their interest to the widow.
[6] This 1940 well was known as the "Grubb & Hawkins-Thibodaux Heirs No. 1," and was located on the parent tract, but not on the Leger tract. Although other mineral leases were granted, no other production was obtained until the 1977 production from Dew Oil & Gas Co., Inc., Joseph Thibodaux et al. No. 1 well.
[7] The mineral lessee never owns the minerals underlying the leased property as such because there can be no "mineral estate" distinct from the surface estate, but he does have a right to assert title to a specified portion of the production. Comment under LSA-R.S. 31:16.