383 So.2d 122 (1980)
Phillip M. SLEET, Sr., d/b/a Phil Sleet Realtor, Plaintiff-Appellant,
v.
James C. HARDING, Defendant-Appellee.
No. 7552.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1980.
*123 Provosty, Sadler & deLaunay, Albin A. Provosty, II, Alexandria, for plaintiff-appellant.
Stafford, Stewart & Potter, Larry Stewart, Alexandria, for defendant-appellee.
Before GUIDRY, CUTRER and DOUCET, JJ.
DOUCET, Judge.
Phillip M. Sleet, Sr. brought this suit for collection of a real estate commission against James C. Harding, alleging that he had an exclusive listing agreement with defendant, or alternatively, that he was the procuring cause for the sale of defendant's property. After a trial, the district court found that plaintiff was not entitled to a commission on either of the alleged grounds. From a judgment dismissing his suit, he appeals. We affirm.
The facts are that in July of 1973, defendant, a United States Air Force Colonel, purchased a home through plaintiff's real estate agency in Alexandria, Louisiana. Shortly after purchasing the home, he was transferred out of the state. He contacted plaintiff's agency for assistance with selling the house, and on October 29, 1973, he entered into a written exclusive listing agreement with plaintiff. The agreement eventually expired by its own terms with the house remaining unsold.
By June of 1975, the house still had not been sold. In an effort to derive some income from his property and discourage vandalism, defendant rented the house to Mr. and Mrs. Walter Kawalski. Plaintiff acted as his agent in collecting the rent and maintaining the property.
In January of 1976, defendant entered into a second written exclusive listing agreement with plaintiff. The agreement provided for a primary term, which expired in July of 1976, and a secondary term, which expired ninety days later in October of 1976.
In July of 1977, one year after the primary term of the second listing agreement had expired, defendant and the Kawalskis executed a buy-sell agreement, pursuant to which the Kawalskis ultimately acquired the house.
On appeal, plaintiff argues that the trial judge erred in failing to find that the 1976 listing agreement had been extended by oral agreement through July 2, 1977. We disagree. In his written reasons for judgment, the trial judge observed the following with respect to the alleged oral modifications of the agreement:
"Plaintiff alleged at trial that defendant had orally extended the listing agreement with plaintiff, including the clause giving plaintiff the exclusive right to sell the house. Testimony on this as well as other matters was in direct conflict. Mr. Sleet, Sr., alleged in his petition and testified at trial that he felt that he had had the exclusive right to sell the house ever since the signing of the first listing agreement in 1973. He felt that the second listing agreement was merely a ratification of an oral extension of the first listing agreement, and that the exclusive nature of the second written contract had been orally extended to the date of the buy-sell agreement. However, Mr. Sleet, Sr. admitted on cross exam that an extension of the exclusive nature of the listing agreement was never specifically discussed with defendant (see transcript pgs. 131-132), and that no written confirmation of any kind was made of the alleged oral extensions. I find this significant. Mr. Sleet and several other witnesses at the trial testified that it has always been Mr. Sleet's personal habit and business practice to reduce all business agreements to writing. Testimony established that he stresses the importance of this practice to his trainees. Plaintiff offered no explanation [sic] for this failure."
Our examination of the record shows the above to be a correct summary of the evidence relevant to this issue. Under these circumstances, we agree that the trial court properly denied recovery on the basis of the exclusive listing agreements.
*124 Alternatively, plaintiff argues that the trial court erred in failing to find that plaintiff was the "procuring cause" of the sale by defendant to the Kawalskis. It is well settled in the jurisprudence of this state that a realtor is entitled to a commission, even though the sale is consummated after the termination of the agency contract, if the realtor was the procuring cause of the sale. See Cramer v. Guercio, 331 So.2d 550 (La.App. 1st Cir. 1976) and the cases cited therein at page 552.
The term "procuring cause" is defined in the following language from 12 C.J.S. Brokers § 91, page 208, which was quoted with approval in Cramer v. Guercio, supra, and Sleet v. Williams, 291 So.2d 495 (La.App. 3rd Cir. 1974):
"As used in that branch of the law relating to brokers' commissions, the terms `procuring cause', `efficient cause', and `proximate cause' have substantially, if not quite, the same meaning and are often used interchangeably; they refer to a cause originating or setting in motion a series of events which without break in their continuity, result in the accomplishment of the prime object of the employment of the broker, which may variously be a sale or exchange of the principal's property, an ultimate agreement between the principal and a prospective contracting party, or the procurement of a purchaser who is ready, willing, and able to buy on the principal's terms."
As the above language suggests, in order to establish that his efforts were the procuring cause of a sale, a broker must show more than the mere fact that his actions in some way aided the sale. Bullis & Thomas v. Calvert, 162 La. 378, 110 So. 621 (1926); Cramer v. Guercio, supra.
The testimony at the trial concerning plaintiff's role in bringing the parties to the sale together is in conflict and irreconcilable. The trial judge reached the following conclusions about the inconsistencies in the testimony:
"Both Col. Harding and Mrs. Kawalski denied that an oral offer was made by plaintiff. They also both denied that plaintiff had initiated any negotiations between them. Col. Harding testified that he directly initiated the discussions that eventually led to the sale of his house by phoning Walter Kowalski [sic]. (see transcript pg. 92). This testimony was corroborated by Mrs. Kowalski [sic], who said that defendant personally contacted her husband in May of 1977. (transcript pg. 195).
"Other testimony offered at trial led this court to believe that plaintiff was not the procuring cause of the sale. One thing is that the alleged offer made by the Kawalskis through Sleet was not put in writing, although to do so is mandatory industry caustom [sic]. Another is that plaintiff never `registered' the Kawalskis as buyers, although plaintiff testified that it is customary in the realty business to do so. (transcript pg. 147). Also, plaintiff denied being involved in negotiations of any kind with the Kawalskis when questioned by Rod Noles, another broker who was trying to sell the house in May of 1977. This denial by plaintiff was made at the very time that defendant and the Kowalskis [sic] were negotiating their deal.
"In conclusion, all plaintiff has proved to the court is that he made an unsuccessful attempt to sell defendant's house in 1975 to persons who were already living in the house. After these negotiations broke down, plaintiff had contact with the buyers by acting as defendant's rental agent. More than two years later defendant initiated entirely new negotiations directly with the buyers, without any participation by plaintiff, and sold the home under completely different terms than those proposed two years earlier. Under these circumstances plaintiff's actions cannot be considered the procuring cause of the sale. Thus plaintiff is not entitled to a commission."
We find no manifest error in the trial court's factual findings. We, therefore, are not at liberty to disturb them. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). In view of those findings, we believe that the *125 court's conclusion that plaintiff was not the procuring cause of the sale is correct.
For the above and foregoing reasons, the judgment appealed by plaintiff is affirmed. All costs of this appeal are taxed to plaintiff.
AFFIRMED.