LLOYD G. TEEKELL, Judge Pro Tern.
This appeal arises following judgment for the plaintiff-appellee realtor in a suit filed against the defendants-appellants for the commission allegedly due upon the sale of the appellants’ property. The trial judge held in favor of the realtor and the sellers appeal.
The facts necessary to our decision are not seriously disputed. On July 18, 1980, Mitchell and Beverly Thibodeaux, Jr. (Sellers) retained the services of Doyle Moody d/b/a American Realty Mart, Inc. (Realtor) to market two parcels of land in Lafayette Parish. Two listing agreements were signed affecting the two adjacent lots. Both agreements provided that:
“I/We agree to pay said Agent 10% if an offer to purchase is accepted by me/us, which fee is earned by the agent when an agreement to purchase/sell is signed by both parties and when the mortgage loan, if any, is secured. Commitment by lender to make loan subject to approval of title shall constitute ‘securing of loan’. The authority granted under this agreement to the Agent shall continue for a period of 6 months from date hereof with expiration date of 1-17, 1981.”
Neither agreement included an extension clause.
Immediately after the listing, the Realtor began showing the subject properties to the ultimate purchaser, Mr. C.W. Conn, Chairman of Conn Appliances, Inc., (Purchaser). A number of offers and counteroffers were passed between the Sellers and Purchaser during the effective period of the listing agreements. However, on January 17,' 1981, the listing agreements expired of their own terms without the parties having agreed to a sale. On one occasion the broker did something that in the real estate business is generally considered to be unwise: he brought the parties together in a face to face meeting at his office.
On January 23, 1981, a second pair of listing agreements were executed affecting the two lots. The listings covered the same properties, contained the same terms, and employed the same language as the previous agreements. Despite protracted negotiations between the aforementioned parties, no terms of sale were agreed upon by the time the listing agreements expired on July 25, 1981.
Although the Real Estate Listing Agreement between the parties had expired under its terms, the parties continued to dicker with each other over the property (through the plaintiff real estate agency) for a considerable time thereafter, with the result that a meeting of the minds between the buyer and seller had evidently been reached, and the sale was to be consummated in August, 1981, on certain specific terms and conditions; but the buyer (Mr. Conn), for whatever reasons, did not show up to consummate the sale. It should be noted here that we are dealing with properties of a value well in excess of one-quarter of a million dollars and which were ideally suited for the needs of Mr. Conn because of the nature and type of the property, along with its geographic location, in relation to other valuable properties owned and operated by Mr. Conn.
After he bypassed the consummation of the sale agreement that had patiently been worked out between him and the property owner through the efforts of the plaintiff real estate agency herein, Mr. Conn made himself scarce to the plaintiff real, estate agency until he subsequently (some nine months later) purchased the properties from the seller for the exact price and on the same terms and conditions that had been previously concurred in by the buyer and seller under the auspices of the plaintiff real estate agency.
In the meantime, the sellers explored other alternatives in attempting to sell their properties. They placed “For Sale By Owner” signs on the lots, and in December of 1981 they listed their real estate with a different broker, the Rutherford Agency. The Rutherford Agency was likewise unable to secure a buyer for the subject properties and their listing agreements expired *1330 in March of 1982 by their own terms. In April the Sellers listed the properties with the Rutherford and Bertinot Agency. However, it is significant to note that these listings contained a stipulation that excluded a realty commission if the properties were sold to Conn. Ultimately, the John Knight Real Estate Agency contacted the Sellers on behalf of Conn Appliances, Inc. and submitted an offer to purchase. After an alleged period of negotiation, the offer was accepted on the same terms and conditions as originally agreed upon in August of 1981. Conn Appliances, Inc. purchased the properties on June 3, 1982.
Doyle Moody learned of the above-mentioned sale and brought suit to recover the commission he felt he was due. The district judge expressly found that there was no evidence before him which might indicate that the Sellers and the Purchaser colluded to avoid paying the plaintiff-realtor his commission. The court further determined that the Realtor was the procuring cause of the ultimate sale in June of 1982. The appellants have asked us to review this latter finding of the district court.
The law on broker’s commissions is relatively clear. If the real estate sale did not take place during the term of the listing agreement and if there was no extension clause in that agreement, the plaintiff-broker must prove he was the procuring cause of the ultimate sale.[1] Creely v. Leisure Living, Inc., 437 So.2d 816 (La.1983).
“Procuring cause has been defined as a cause originating or setting in motion a series of events which, without break in their continuity, result in the accomplishment of the prime object of the employment of the broker, which may variously be a sale or exchange of the principal’s property, an ultimate agreement between the principal and a prospective contracting party, or the procurement of a purchaser who is ready, willing and able to buy on the principal’s terms.” (Citations omitted) (Emphasis ours). Creely v. Leisure Living, Inc., supra, at pages 821-822.
In Sleet v. Harding, 383 So.2d 122 (La.App. 3rd Cir.1980), the Court held that the exclusive listing agreement with the real estate agent had expired and that the broker was not the procuring cause of the sale since the sale was negotiated by the owner and the purchaser more than two years after the listing agreement had expired. Moreover, the sale was consummated on completely different terms. The purchaser had lived in the house since before the initial listing agreement with the broker.
In Jackson v. Free, 442 So.2d 1346 (La.App. 3rd Cir.1983), the Court found that the sale was consummated over a year after the listing agreement had been terminated in writing and that the sale resulted from the seller’s contacts with the purchaser long prior to broker’s involvement.
In both Sleet and Harding the broker simply did not “bring the parties together.”
In Saturn Realty, Inc. v. Muller, 196 So.2d 321 (La.App. 4th Cir.1967), the broker was found to have been the procuring cause because of his continued and uninterrupted efforts, which culminated in the sale shortly after the expiration of the broker’s listing agreement.
In the case before us, we must determine whether the Realtor was the procuring cause of the ultimate sale.
Although the time lapse of more than nine months between the failure of the originally negotiated agreement and the ultimate sale may appear somewhat troublesome, nothing of a significant or meaningful nature ever actually happened in the interval.
The supreme fact here is that the real estate agency found a dead ringer for the purchase of the property, which was recognized by all three of the parties involved, i.e., the real estate agency, the buyer, and the seller. The unfortuitous happenstance of spiraling interest rates and a *1331 slackening of inflation about this time contributed to the unlikelihood of the property owner being able to sell the property at any higher price to anyone else. This renders almost negligible the significance of any subsequent listing of the property with other realtors, particularly with the exclusion of any commission if the property were sold to Mr. Conn and also in view of the fact that the listing price of the property was pegged for sale at a higher price than that originally contemplated and subsequently reflected in the consummated sale to Mr. Conn. In other words, Mr. Thibodeaux and Mr. Conn would have known that any subsequent listing could only be enforced against Thibodeaux at the higher pegged price, and Thibodeaux also knew that Mr. Conn was waiting in the gap at some price, which happened to turn out to be the identical price, and according to the same terms and conditions originally brought about through the efforts of plaintiff realty agency.
The trial judge stated in his reasons for judgment, among other things, that:
“ ... I’m convinced that Mr. Thibodeaux believed that the time had passed for any — for hearing anything from Mr. Conn, but nevertheless, he did advise another agency with whom he listed the property, the Rutherford Agency, that he reserved Mr. Conn from receiving any commission — from Rutherford’s receiving any commission as a result of a sale resulting from that agreement. The only evidence before the Court as to what this meant by reserving a prospective purchaser who has seen the property before from a commission with a subsequent real estate listing, is that if in fact that purchaser does buy the property according to the same terms as before, then in fact it is the procuring cause, and that first real estate agency is entitled to his commission. I think that is what is the only reasonable conclusion that can be reached by the Court in this instance, that actually there were no efforts made by anybody other than the plaintiff from the August fourteenth, nineteen eighty-one meeting, until the final sale, to dispose of the property so far as Mr. Conn was concerned, that’s true. Mr. Thibo-deaux did put a sign on the property, but there’s no indication that the sign had anything to do with Mr. Conn coming back and consummating the sale on the basis of the same terms that had been agreed upon in the August fourteenth meeting.
So it’s obvious to the Court that the efforts of the plaintiff in this case were the procuring cause of the sale that was finally consummated, and as a consequence, the plaintiff is entitled to the commission agreed upon in the listing.”
We agree that under the particular facts of this case, the trial judge did not exceed the discretion generally afforded the trier of facts and that his findings should not be disturbed on appeal. Costs of this appeal are to be borne by the defendants-appellants.
AFFIRMED.
KING, J., concurs for the written reasons assigned.
DOUCET, J., concurs for the reasons assigned by KING, J.
DOMENGEAUX, J., dissents for the written reasons assigned.
ALLEN M. BABINEAUX, J. Pro Tern., dissents for the reasons assigned by DO-MENGEAUX, J.

. The other basis of relief available to the plaintiff-appellee, quantum meruit and unjust enrichment, were not plead, and at any rate, would not be a ground for recovery on the facts of the case at bar. Creely v. Leisure Living, Inc., 437 So.2d 816 (La.1983).