DOMENGEAUX, Judge,
dissenting.
I respectfully suggest that the majority opinion opens a Pandora’s Box and could very well result in pandemonium in the real estate industry. This opinion violates the law of contracts. It would be my impression that the majority was inhibited with certain equitable considerations, which although commendable, have no place in this case. An elementary legal proposition in Louisiana is that equity is to be resorted to only where there is no express law on the subject. (La.C.C. Art. 21). Here, we have express law to guide us.
I agree that the facts necessary to a decision in this case are undisputed. They are set out generally in the majority opinion, and I will take the liberty of incorporating parts of that opinion in this dissent, with certain emphasis where needed.
On July 18, 1980, Mitchell and Beverly Thibodeaux, Jr. (Sellers) retained the services of Doyle Moody d/b/a American Realty Mart, Inc. (Realtor) to market two parcels of land in Lafayette Parish. Two listing agreements were signed affecting the two adjacent lots. Both agreements provided that:
“I/We agree to pay said Agent 10% if an offer to purchase is accepted by me/us, which fee is earned by the agent when an agreement to purchase/sell is signed by both parties and when the mortgage loan, if any, is secured. Commitment by lender to make loan subject to approval of title shall constitute ‘securing of loan’.
The authority granted under this agreement to the Agent shall continue for a period of 6 months from date hereof with expiration date of 1-17, 1981.”

Neither agreement included an extension clause.

Immediately after the listing, the Realtor began showing the subject properties to the ultimate purchaser, Mr. C.W. Conn, Chairman of Conn Appliances, Inc., (Purchaser). A number of offers and counteroffers were passed between the Sellers and Purchaser during the effective period of the listing agreements. However, on January 17, 1981, the listing agreements expired on their own terms without the parties having agreed to a sale.
On January 23, 1981, a second pair of listing agreements were executed affecting the two lots. The listings covered the same properties, contained the same terms, and employed the same language as the previous agreements. Despite heavy negotiations between the aforementioned par *1333 ties, no terms of sale were agreed upon by the time the listing agreements expired on July 25, 1981. The Sellers and the Realtor verbally agreed to a short extension of the agency relationship which ultimately concluded some time in the beginning of August. It was during the period of this verbal extension that the appellee-realtor claimed an oral agreement was reached between the Sellers and the Purchaser.
The Sellers began to explore other alternatives in attempting to sell their properties. They placed “For Sale By Owner” signs on the lots, and in December of 1981 they listed their real estate with a different broker, The Rutherford Agency. The Rutherford Agency was likewise unable to secure a buyer for the subject properties and their listing agreements expired in March of 1982 by their own terms. In April the Sellers listed the properties with The Rutherford and Bertinot Agency.
On April 17, 1982, approximately nine months after negotiations had broken down between the Sellers and the Purchaser, the John Knight Real Estate Agency contacted the Sellers on behalf of Conn Appliances, Inc. and submitted an offer to purchase. After an alleged period of negotiation, the offer was accepted on the same terms as originally drafted in August of 1981. Conn Appliances, Inc. purchased the properties on June 2, 1982. (No issue is made here concerning any commission which Mr. Knight may have received or from whom.)
Doyle Moody learned of the above-mentioned sale and brought suit to recover the commission he felt he was due. The district judge expressly found that there was no evidence before him which might indicate that the Sellers and the Purchaser colluded to avoid paying the plaintiff-realtor his commission. However, the trial court held Moody to be the procuring cause of the sale and awarded him his commission.
The law on broker’s commissions is clear. If the real estate sale did not take place during the term of the listing agreement and if there was no extension clause in that agreement, the plaintiff-broker must prove he was the procuring cause of the ultimate sale.[1] Creely v. Leisure Living, Inc., 437 So.2d 816 (La.1983). “Procuring cause” has been defined as:
“a cause originating or setting in motion a series of events which, without break in their continuity, result in the accomplishment of the prime object of the employment of the broker, which may variously be a sale or exchange of the principal’s property, an ultimate agreement between the principal and a prospective contracting party, or the procurement of a purchaser who is ready, willing and able to buy on the principal’s terms.” (Citations omitted) (Emphasis ours).
Norwood & Hyde, “Extension Clauses in Louisiana Listing Agreements,” 42 La.L. Rev. 1011 (1981); see also Creely v. Leisure Living, Inc., supra.
The facts of this case do not fit so as to allow the Realtor-plaintiff relief. He was not the procuring cause of the real estate sale of June 3, 1982. Under the above-cited definition we should find that the Realtor has failed to meet his burden. Specifically, there was a significant suspension or interruption of negotiations between August of 1981 and April, 1982, as shown by the Sellers’ attempts to attract a buyer through “For Sale By Owner” signs and listings with other real estate agencies. As a matter of law this nine month abandonment of negotiations foils the realtor’s attempt to prove he was the procuring cause of the sale.
I am not unmindful of the cases cited to us by both the appellants and the appellee. However, none of the factual situations of those cases warrants a similar finding in the case before us. For example, in both Jackson v. Free, 442 So.2d 1346 (La.App. 3rd Cir.1983), and Sleet v. Harding, 383 So.2d 122 (La.App. 3rd Cir.1980), whether the Broker was the procuring cause of the *1334 real estate sale turned on the issue of which party initiated negotiations between the purchaser or the seller. On the other hand, the issue before us is whether the acknowledged efforts of the broker set in motion a “series of events which, without break in their continuity, resulted in the sale. Creely v. Leisure Living, Inc., supra. Conversely, in the case of Saturn Realty v. Muller, 196 So.2d 321 (La.App. 4th Cir.1967), the broker was found to have been the procuring cause precisely because of his continual and constant efforts which, uninterruptedly, culminated in the purchase.
The Realtor’s case would probably be stronger if his contracts would have had extension clauses. There were none. Neither did they have any clauses to protect the Realtor’s commission if an ultimate sale was made to any of his prospective purchasers who might have ultimately bought the property. The Realtor is being allowed to collect a commission, in effect, without any contract. They had long expired.
The definition of “procuring cause” is strong, bold and clear to the effect that the cause originating or setting in motion a series of events, etc. — must be without a break in their continuity. In order to qualify for umbrage under the “procuring cause” definition, an agent or broker must not only “procure” the purchaser, but just as important, the culmination of the transaction must be a continuous effort, without break, remission or suspension. Can we say that nine months of inactivity is not such a break as to defeat the claim of “procuring cause”? (Particularly in view of the defendants’ separate efforts to sell their property during the interim). These facts of course are bolstered by the fact that there were no extension clauses in the contracts.
Under the rationale of the majority opinion an interim of one or two years, or possibly more would still allow the Realtor his commission. — This is legally wrong.
I might add that the comment in the majority opinion that the Realtor’s bringing the parties together in a face to face meeting is generally considered to be unwise, is simply editorializing and speculation and is dehors of the record. To the same effect is the rather long paragraph in the majority opinion appearing immediately before the quotation from the trial judge’s reasons. The latter instance is particularly true in view of the fact that the district judge who tried the case made it very clear that there was no evidence before him which might indicate that the Sellers and the Purchaser colluded to avoid paying the Realtor his commission. In short, I fear my bretheren have mistaken an issue of law for one of fact, and have further compounded their error by entering the realm of the factfinder instead of adhering to the role of the appellate court.
I respectfully dissent and would reverse the judgment of the trial court and order plaintiff’s suit dismissed at his costs.

. The other bases of relief available to the plaintiff-appellee, quantum meruit and unjust enrichment, were not pled, and at any rate, would not be a ground for recovery on the facts of the case at bar. Creely v. Leisure Living, Inc., 437 So.2d 816 (La.1983).